Charles M. SMILLIE, Jr., et al., Plaintiffs,

v.

PARK CHEMICAL COMPANY, a Michigan Corporation, et al., Defendants.

Civ. No. 771238.

United States District Court, E. D. Michigan, S. D.

Jan. 16, 1979.

whether screening would be appropriate in this case.

Howard K. Schwartz, Julius H. Giarmarco, Southfield, Mich., for plaintiffs.

Donald S. Young, Rodney A. Knight, Detroit, Mich., for defendants.

## MEMORANDUM OPINION

DeMASCIO, District Judge.

Park Chemical Company's (the Company) stock is registered under § 12 of the Securities and Exchange Act of 1934, 15 U.S.C. § 78*l*, and has been traded on the American Stock Exchange since 1952. Approximately 43% of the Company's stock (143,813 shares of a total issue of 336,250) is held in a Trust established under the Last Will and Testament of William Park Woodside, Sr.[1] The net income from the trust is distributable to defendant William P. Woodside, Jr., the testator's son. The defendant Woodside, Jr. and his two daughters, plaintiff Betty Jean Smillie and Sue Webster, are the present Trustees of the trust. The will provides that upon the death of defendant Woodside, Jr., the corpus of the trust is to be distributed equally to plaintiff Betty Smillie and her sister Sue Webster, the wife of defendant Robert T. Webster, a Director and current President of the Company. The remaining named defendants were and are officers and directors of the Company.

The plaintiff Charles M. Smillie, Jr., was a Director of the Company from 1965 until his resignation in 1972. He presently owns 100 shares of the Company's common stock. His wife, plaintiff Betty Smillie, apart from her remainder interest in the Testamentary Trust, owns one share of the Company's common stock which she purchased in 1976. The plaintiffs, on behalf of themselves and derivatively for the Company, filed this complaint alleging that the defendants caused the Company to file with the Securities and Exchange Commission (SEC) "proxy statements" with respect to annual stockholders' meetings to be held in May 1973, 1974, 1975 and 1976; that defendants then caused "such proxy statements to be mailed to then record shareholders of [the Company] as part of a solicitation of their proxies to be voted at such annual meeting[s];" that by use of the proxies received, defendants were able to approve a Key Employee's Stock Option Plan in 1973 and a Management Protection Resolution in 1976; and that the above described proxy statements violated § 14 of the Securities Exchange Act of 1934 and various regulations promulgated by the SEC. Complaint ¶ 14–16.

Specifically, the plaintiffs alleged that § 14 of the Securities and Exchange Act of 1934 and SEC Rule 14(a), 17 C.F.R. § 240.-14A, were violated when defendants purposely failed to disclose in the proxy statements that William Woodside, Jr., Chairman of the Board of Directors and entitled to vote approximately 43% of the common stock as Trustee of his father's trust, was the father-in-law of the Company President, Robert Webster; that defendant Webster was a beneficiary under the Stock Option Plan approved in 1973; that defendant Webster's wife, Sue Ann Webster, had a 50% remainder interest in the Trust; that a discretionary bonus plan existed in the Company and a percentage of Webster's income derived from that plan; that the Company had a pension plan that benefitted Webster; and that the proxy statements did not properly compute the corporation's earnings per share because they omitted the common stock equivalent of Key Employee's Stock Options that were issued and outstanding. Complaint ¶ 16a–f. The plaintiffs seek recision of all corporate action taken pursuant to the proxies obtain-

---

1. See Mitchell affidavit ¶ 4.

ed in the years 1973, 1974, 1975 and 1976, and specifically seek to set aside the Key Employee Stock Option Plan. Since the facts are not in dispute, the parties filed cross motions for summary judgment.

■ In their summary judgment motion, the defendants contend that this action is barred by the two-year statute of limitations contained in Michigan's Blue Sky Law, M.C.L.A. § 451.501 et seq. In *IDS Progressive Fund, Inc. v. First of Michigan*, 533 F.2d 340 (6th Cir. 1976), the court held that the six-year Michigan statute of limitation applicable to actions for common law fraud applied to actions for alleged violations of § 10(b) of the Securities Exchange Act of 1934 and of Rule 10(b)–5. The defendants seek to distinguish *IDS Progressive Fund, Inc.*, by arguing that the standard of liability under § 14(a) includes negligence and, therefore, is more akin to the Blue Sky Law. Since the Blue Sky Law's limitation period is two years, defendants argue that the complaint should be dismissed as to 1973, 1974 and 1975. Although this case presents an issue of apparent first impression, we find this case analogous to *IDS Progressive Fund, Inc.* and hold that the six-year period of limitations provided in M.C.L.A. § 600.5813 applies. There is no provision in the Michigan Blue Sky Law that even deals specifically with proxy statements. It seems to us, therefore, that a stronger argument can be made for rejecting its period of limitations. It is apparent that no scienter is necessary for liability under § 14(a) and the defendants offer no reason why the *IDS Progressive Fund, Inc.* recognition of the policy favoring a longer period of limitation for remedial legislation should not be applicable here. We conclude that the six-year limitations for fraud should be applied and, accordingly, we deny summary judgment for defendants on this ground.

■■ The defendants next contend that plaintiffs, having failed to timely assert their claims to the Company prior to each of the shareholder meetings in question, should now be barred from doing so by the equitable doctrines of laches and estoppel. The defendants seem to be saying that plaintiffs had the duty to come forward and warn the defendants of possible violations of the law and to insulate defendants from their own possible violations. We think this argument lacks merit. The defense of estoppel requires a showing of justifiable reliance. If the omitted facts in the proxy statements violated relevant regulations, defendants could never justify reliance upon the illegal proxy statements. In any event, it is apparent from defendants' brief that these plaintiffs, on several prior occasions, have attempted to oppose prior corporate transactions.[2] Thus, defendants may not have summary judgment based upon laches or estoppel.

■ We do find merit, however, in defendants' contention that the allegations concerning the election of officers in 1973 and 1974 are moot because those officers have completed their terms. The plaintiffs seek only injunctive relief. To award injunctive relief at this point in time would be meaningless. *Browning Debenture Holders' Committee v. Dasa Corporation*, 524 F.2d 811 (2d Cir. 1975). Moreover, it is undisputed that plaintiff Betty Jean Smillie did not even own voting stock in 1973, 1974, or 1975. Clearly, she lacks standing to sue for alleged proxy violations occurring during those years. *See Wulc v. Gulf Western Industries, Inc.*, 400 F.Supp. 99, 103–04 (E.D.Pa.1975). Thus, with respect to the election of directors in 1973 and 1974 and on the issue of standing as to plaintiff Betty Jean Smillie defendants are entitled to summary judgment.

■ Remaining for resolution are the claims of plaintiff Charles Smillie regarding the stock option plan adopted in 1973, the Management Protection Resolution adopted in 1976, the election of officers in 1975 and 1976, and Betty Smillie's claims regarding

2. Immediately after resigning as a director of the Company, plaintiff financed prior litigation in this court. A judge of this court dismissed the action because of collusion. *Tralich v. Park Chemical*, (E.D.Mich. No. 39244).

the 1976 meeting. The plaintiffs contend that defendants failed to comply with Items 4(a)(1), 6(a)(5) and 11(c) of Schedule 14A, 17 C.F.R. § 240.14a–101. Item 4(a)(1) requires the disclosure of "any substantial interest, direct or indirect, by security holding or otherwise" of each director or officer in "any matter to be acted upon." Item 4(a)(4) requires similar disclosure for each associate of each officer or director. The plaintiffs contend that defendant Woodside had a direct interest in the Stock Option Plan voted on in 1973 and the Management Protection Resolution voted on in 1976 because he was the father-in-law of defendant Webster. They argue that failure to disclose this interest violated this item. Defendants contend that Woodside had no financial interest in these two proposals as defined in Item 4(a)(1). We agree. The only interest that Woodside would have had was a desire to see proposals passed which benefitted his son-in-law. He was not eligible to receive options under the stock option plan, nor was he protected by the management protection resolution. We, therefore, conclude that there was no violation of Item 4(a).

■ Item 6(a)(5) requires that, for each nominee for director and for each director whose term continues beyond the year of the meeting, a table disclose any beneficial ownership by him and/or his associates totaling ten percent or more of any class of stock of the corporation. It is undisputed that defendant Woodside's ownership of 43% of the Company's common stock was disclosed but that it was not disclosed in connection with Webster. It is also undisputed that defendant Woodside's relationship to Webster was not disclosed. Defendants argue, however, that because they disclosed defendant Woodside's stock interest when detailing Woodside's candidacy for director, they did not have to disclose it a second time in connection with Webster. We do not agree. Item 6 clearly states that the information must be furnished with respect to *each person*. The reason is readily apparent. Given the disclosure made in the proxy statements at issue, shareholders could evaluate Woodside as a director but could not make a similar evaluation of Webster. A shareholder cannot evaluate Webster without knowing his full stock interest in the Company. The Securities and Exchange Commission (SEC) has defined that interest to include stock held by relatives. A shareholder who knows that Webster, acting with his relatives, could control a large block of stock may not wish to elect him to the board of directors for fear that he will not adequately protect the interest of minority shareholders. We, therefore, conclude that defendants violated Item 6(a)(5) with respect to the election of directors in 1975 and 1976.

■ Item 11(c) requires that when a stock option plan is presented for approval, the proxy statement must "describe adequately the provisions already made pursuant to all bonus, profit sharing, pension, retirement, stock option, stock purchase, deferred compensation, or other remuneration or incentive plans, now in effect or in effect within the past five years" for each officer expected to participate in the plan whose direct remuneration exceeds $40,000. It is undisputed that defendants Webster and Mitchell were officers expected to participate in the plan, that their direct remuneration exceeded $40,000, that they had received substantial bonuses, and that the existence of such bonuses was not disclosed. The defendants argue, however, that disclosure was not required because the bonuses were discretionary and were not given pursuant to any formal plan. We do not read the definition of "plan" as strictly as the defendants. Item 11 adopts the definition of plan provided in the instructions under Item 7(b), which includes "all plans, contracts, authorizations or arrangements, whether or not set forth in any formal documents." In their answer, the defendants admit that for many years a portion of the compensation paid to certain of its employees has been paid pursuant to a bonus plan. The Mitchell affidavit is not inconsistent with this admission. The affidavit merely states that whether to pay a bonus to a key employee and the amount are discretionary with the board of directors'

compensation committee. The purpose of a bonus, if it is not a waste of corporate assets, must be a reward for services performed during the year. The pattern of providing such rewards over the past few years provides incentive for officers and directors to perform optimally and to remain with the Company. Therefore, the bonus payments were clearly made pursuant to an arrangement and are a plan within the SEC definitions. At oral argument, counsel for defendants characterized the bonus payment as similar to those provided by most corporations in the United States. This characterization makes clear that the broad definition of plan was intended to encompass the payments made to Mitchell and Webster. Defendants' argument that they were only required to disclose plans for future bonus payments is inconsistent with the clear language of the regulation. We hold, therefore, that the failure to disclose the bonus plan in 1973 violated Item 11(c).

Plaintiffs contend that defendants failed to properly account for issued and outstanding stock options in computing earnings per share and, therefore, violated Rule 14a–3. The affidavit of R. J. Mitchell, however, stands unrefuted and establishes that there is no factual basis for this allegation.

■■■ Finally, the plaintiffs contend that all of these items were material facts and their omission constituted an independent violation of Rule 14a–9. Defendants respond, however, that as a matter of law these omissions were not material. An omitted fact is material if there is a substantial likelihood that a reasonable shareholder would consider that fact important in deciding how to vote. *TSC Industries v. Northway, Inc.,* 426 U.S. 438, 449, 96 S.Ct. 2126, 48 L.Ed.2d 757 (1976). Thus, the determination whether an omitted fact is material presents a mixed question of law and fact. We cannot say from the undisputed, underlying facts whether certain established omissions are either so obviously unimportant, in light of other disclosures made, or are so obviously important, as to conclusively establish their materiality at this stage of the proceeding and on the

record before us. *Cf. TSC Industries, supra,* at 450, 96 S.Ct. 2126. We must, therefore, deny both motions for summary judgment with respect to alleged violations of Rule 14a–9. The type of reliance the shareholder may justifiably place upon these omissions is one of the factors the court must consider on the issue of remedy. Therefore, our denial of summary judgment on Rule 14a–9 should not unduly complicate further proceedings in this cause. The parties may well be able to stipulate to all the evidence necessary to the resolution of this issue.

■■■ The parties differ on whether there is a causal connection between the violations already established and the damage complained of. A shareholder makes a sufficient showing of causal relationship when he proves that the proxy solicitation itself, rather than the particular defect in the solicitation materials, was an essential link in the accomplishment of a transaction. *Mills v. Electric Auto-Lite Company,* 396 U.S. 375, 385, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970). On the issue of causation, defendants repeat the arguments they made in discussing materiality. Defendants' brief at 31. In our view, if the facts disclose (or the parties can agree) that management needed the proxy votes solicited, then causation is established as matter of law. On the other hand, if, as plaintiffs seem to indicate in their brief, defendants controlled a majority of the stock without the proxy solicitation, then causation becomes a question of fact. In this case, we have concluded that plaintiffs are entitled to summary judgment on the issue of liability with respect to violations of Item 11(c) and 6(a)(5) of Schedule 14a. Thus, if the regulations required that these omissions be included in every proxy statement, then they are material as a matter of law. If the proxy votes were necessary to carry the resolutions being considered and to elect directors, then causation is established. Although they may have held sufficient shares to approve all matters under consideration, defendants do not deny that management found the proxy solicitation to be essential. It would

appear to us that causation is established as a matter of law. *See Schlick v. Penn-Dixie Cement Corporation,* 507 F.2d 374, 381–83 (2d Cir. 1974), *cert. denied* 421 U.S. 976, 95 S.Ct. 1976, 44 L.Ed.2d 467 (1976).

Although we have found violations of Item 11(c) in 1973 and of Item 6(a)(5) in 1975 and 1976, it does not necessarily mean that plaintiffs are entitled to the relief they seek. It is undisputed, for example, that plaintiff did not complain about the same omissions in the Company's proxy statements when they occurred during his own tenure as a director. Moreover, he does not allege that he or anyone else suffered a pecuniary loss. When considering the remedy issue, a district court sits in equity and must consider the type of violation, the fairness of the transaction, the knowledge of the parties and their own culpability. *Mills v. Electric Auto-Lite Company,* 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970). The remedy issue, in any event, cannot be resolved on summary judgment, at least not on the record before us. An order consistent with this opinion will be entered.

IT IS SO ORDERED.