**WISCONSIN REAL ESTATE INVESTMENT TRUST, Plaintiff,**

v.

**George WEINSTEIN, Reit Property Managers, Ltd., Stanley H. Weinstein, and Weinstein Associates, Defendants,**

and

**Telvest, Inc., Harold Sampson, Clyde William Engle, Charles F. DiGiovanna, Nathan H. Dardick, Richard Y. Fisher, Richard C. Jones, Gerald A. Kien, John P. Miller, Joel Scheckerman, Everett A. Sisson, Robert R. Starnes, and Robert H. Weitzman, Additional Parties to Counterclaims.**

Civ. A. No. 80–C–410.

United States District Court,
E. D. Wisconsin.

Jan. 22, 1982.

John M. Olson, Richard C. Ninneman, and Michael T. Hart, Whyte & Hirschboeck, S. C., Milwaukee, Wis., for plaintiff and counterclaim defendants; Nathan Dardick, Dardick & Jadwin, Chicago, Ill., of counsel.

Irvin B. Charne, Howard A. Pollack and James H. Hall, Jr., Charne, Glassner, Tehan, Clancy & Taitelman, S. C., Milwaukee, Wis., for Weinstein defendants and Reit Property Managers, Ltd.

## DECISION AND ORDER

REYNOLDS, Chief Judge.

This action arises out of the successful takeover of the Wisconsin Real Estate Investment Trust ("WREIT" or "the Trust") by a group of dissident shareholders in the spring of 1980. The case has previously been before the court many times on motions. Since the last decision and order was issued, the Trust and its current management have settled their disputes with all of the former trustees, except George Weinstein, and with the Trust's former counsel. Remaining as defendants are the Trust's former manager Reit Property Managers, Ltd. ("RPM"), RPM's two officers George Weinstein and his son Stanley Weinstein, and Weinstein Associates.

The second amended complaint sets forth two causes of action against the Weinstein defendants, one involving an alleged failure to disclose material information to shareholders in connection with the issuance of 27,000 shares of stock to RPM in February 1980, and the second involving an alleged breach of fiduciary duties to the Trust in connection with the management of the affairs of the Trust and the compensation paid to RPM. The Weinstein defendants have pled twelve counterclaims. Eleven are against WREIT alone. The first counterclaim names as additional counterclaim defendants the members of the WREIT Shareholders Protection Committee ("WSPC"), which managed the takeover of the Trust, and the slate of trustees elected in the spring of 1980. The first counterclaim alleges violations of 15 U.S.C. § 78n(a) and Rule 14a-9 through the issuance of allegedly false and misleading proxy materials in connection with the 1980 election. The second through tenth counterclaims and the twelfth, brought by RPM against WREIT, are principally damage claims occasioned by various actions taken by the Trust after the 1980 election. The eleventh counterclaim, brought by George Weinstein, Stanley Weinstein, and RPM, is a claim for indemnification for the costs of the suit, including attorney's fees.

Currently pending before the court are the plaintiff's and counterclaim defendants' motion for summary judgment on the Weinstein defendants' first counterclaim; the Weinstein defendants' motion for leave to file two new counterclaims (the thirteenth and the fourteenth) and to plead supplemental defenses; Stanley Weinstein's motion for a protective order; and the plaintiff's and counterclaim defendants' motion to compel Stanley Weinstein's appearance for a deposition. For the following reasons the summary judgment motion will be granted in part and denied in part, and the motion for leave to file supplemental pleadings will be granted. As for the discovery dispute, Stanley Weinstein will be required to appear in Milwaukee for deposition four weeks before the date of trial or he will be precluded from testifying at trial.

*The Summary Judgment Motion and the Defendants' Proposed Supplemental Pleadings*

The first counterclaim is brought by George Weinstein and RPM against WREIT, Telvest, Sampson, Engle, DiGiovanna, Dardick, Fisher, Jones, Kien, Miller, Scheckerman, Sisson, Starnes, and Weitzman. Telvest, Sampson, DiGiovanna, and Dardick were members of the WSPC, and Engle is alleged to have exercised control over the WSPC on behalf of Telvest. The remaining counterclaim defendants are the trustees of WREIT elected at the spring 1980 election. The counterclaim seeks injunctive and declaratory relief against Telvest, Engle, Dardick, Sampson, and DiGiovanna against future violations of 15 U.S.C. § 78n(a) and Rule 14a–9, and an order setting aside the election of the trustees and ordering a new election.

The proposed supplemental thirteenth counterclaim alleges similar proxy violations in connection with the April 1981 election of trustees. George Weinstein and RPM allege in that proposed pleading that the results of the 1981 election were made possible only by the use of misleading proxy materials in 1980 and, in addition, that new and misleading materials were used in connection with the 1981 election. They seek injunctive and declaratory relief against WREIT, Engle, Dardick, and a company called Hickory Furniture Company, which is allegedly controlled by Engle and has acquired the Trust shares formerly held by Telvest, against the future use of misleading proxy materials. Also named as counterclaim defendants are Miller, Sampson, Jones, Kien, Sisson, and Surface who, along with Engle and Dardick, were elected trustees at the 1981 election. RPM and George Weinstein seek to have that election set aside and to have a new election ordered.

 The plaintiff and counterclaim defendants argue that because a new election of trustees took place in 1981, all claims regarding misuse of proxy materials in connection with the 1980 election are moot and should be dismissed. The point is well taken with regard to those trustees who were elected in 1980 but were not reelected in 1981, i.e., Fisher, Scheckerman, Starnes, and Weitzman. With regard to the claim for injunctive and declaratory relief, the courts have uniformly held that where only declaratory relief is sought, the election of a new group of trustees moots the claim. *Browning Debenture Holders' Committee v. DASA Corporation*, 524 F.2d 811, 816–817 (2d Cir. 1975); *Cohen v. Ayers*, 449 F.Supp. 298, 321 (N.D.Ill.1978); *Smillie v. Park Chemical Company*, 466 F.Supp. 572, 575 (E.D.Mich.1979). Where injunctive relief is sought to prevent a recurrence of proxy violations, however, a claim arising out of a past election, even if the terms of the persons elected have expired, is not moot if there is a real threat of recurrence. *Seibert v. Sperry Rand Corporation*, 586 F.2d 949, 951 (2d Cir. 1978); *Browning Debenture Holders' Committee v. DASA Corporation*, supra. Similarly, if the proxy materials used in connection with the past election contributed to the outcome of the most recent election, the claim for injunctive and declaratory relief is not moot. *Maldonado v. Flynn*, 597 F.2d 789, 797 n. 10 (2d Cir. 1979).

In this case the terms of the directors who were elected in 1980 have expired, and as to the counterclaim defendants Fisher,

Scheckerman, Starnes, and Weitzman, therefore, they no longer being on the board of directors, the prayer to set aside the election and to hold a new election is moot. *Maldonado v. Flynn, supra.*

As to the claims for injunctive and declaratory relief against the Trust and those persons allegedly directing its policies and responsible for the proxy materials, the first counterclaim, by virtue of the alleged recurrence of abuses during the 1981 election, is not moot.

The Trust contends that in order to add a supplemental counterclaim at this stage of the proceedings, the Weinstein defendants must demonstrate that they have substantial evidence to support the supplemental claim, and it contends that they cannot do so, considering that in the spring of 1980 this Court denied their request for injunctive relief and found that they had not demonstrated a reasonable likelihood of success with regard to their claims about the 1980 election.

Even assuming that the standard which the Trust describes is the correct standard to govern addition of a supplemental claim, but cf. 6 Wright and Miller's Federal Practice and Procedure § 1504 at 542–543, as the Weinsteins' counsel pointed out during the oral argument held on November 20, 1981, my decision regarding the 1980 election rested in large part on my conclusion that the WSPC had no obligation to reveal in its proxy materials certain information about Clyde William Engle, who is the dominant figure in the events of the takeover because Engle was not a candidate for trustee. Subsequent to the election, however, the newly-elected trustees voted to expand the size of the board to add Engle as a trustee. That action raises at least a substantial question whether all relevant information was revealed to the Court prior to its ruling on the Weinsteins' preliminary injunction motion and provides some evidence which might support a different conclusion with regard to the injunction claim after a full hearing on the merits. In other words, the decision on the preliminary injunction motion was, as denominated, pre-liminary, and in light of subsequent events there is an increased probability that the Weinstein defendants do have a meritorious claim.

■ Allowing an amendment of the pleadings at this stage to permit the thirteenth counterclaim is necessary in view of the interrelation of that claim to the counterclaim previously made by the Weinstein defendants in connection with the 1980 election and for the disposition of the entire controversy among the parties. The Weinstein defendants have assured the Court that there will not be any need for any substantial additional discovery.

Finally, I note that Telvest and DiGiovanna are not named in connection with the proxy violations which occurred during the 1981 election. As to them, consequently, summary judgment on the Weinstein defendants' first counterclaim might be appropriate if Telvest and DiGiovanna are no longer in a position to control the policies of the Trust. Since their current position with regard to the Trust is not established in the record, however, summary judgment will not be granted at this time.

As for the proposed fourteenth counterclaim, which RPM seeks leave to assert and which involves an alleged breach of the Trust's former agreement with RPM arising out of a September 1981 tax assessment on property formerly managed by RPM, and the defendants' newly-proposed defenses arising out of the plaintiff's settlement with the former trustees and the Trust's former counsel, the Trust does not oppose those amendments, and they will be permitted.

*Stanley Weinstein's Deposition*

Stanley Weinstein was the executive vice-president, treasurer, and sole shareholder of RPM and a partner in Weinstein Associates. He was substantially involved in RPM's performance of its contracts with the Trust. Technically he is a claimant only on the eleventh counterclaim, which is for indemnification, twelve of the other counterclaims being brought by RPM alone, and the two proxy counterclaims by RPM and George Weinstein.

In May 1980, Stanley Weinstein was deposed in connection with the preliminary injunction motions then pending on the 1980 election. In December 1980, he and his family emigrated to Israel. It appears that he intends to return to the United States for trial but not before. In June 1981, the Trust noticed his deposition for Milwaukee. By agreement of the parties the deposition was postponed pending resolution of the issue whether or not he must travel to Milwaukee, or plaintiff's counsel to Israel, for the deposition.

The parties agree that in general a defendant is entitled to protection from deposition anywhere except at his place of business or residence, and that a defendant who brings a counterclaim does not lose that protection if the counterclaim is compulsory but is put in the position of a plaintiff if the counterclaim is permissive and may be deposed at the place of trial. See generally 4 Moore's *Federal Practice* ¶ 26.70[1.–3]; 8 Wright and Miller's *Federal Practice and Procedure* § 2112; *Continental Federal Savings and Loan Association v. Delta Corporation of America*, 71 F.R.D. 697 (W.D. Okl.1976). The parties also agree that a Court is vested with broad discretion under Rule 26 of the Federal Rules of Civil Procedure to condition the taking of a deposition upon such terms as are just under the particular circumstances of a case or to require that discovery proceed by means of some alternate method, such as the use of written questions.

In this case, on the one hand, Stanley Weinstein was substantially involved in the day-to-day operations of RPM and its performance of its contracts with the Trust. His testimony will no doubt play a significant part in the defendants' presentation of their defense and of their counterclaims at trial. Both RPM and Weinstein Associates are Wisconsin corporations, and officers of a corporation, if defendants, may normally be deposed at the corporation's principal place of business. 4 Moore's, supra, ¶ 26.-70[1.–4]; 8 Wright and Miller's, supra, § 2112 at 410. There is evidence by way of affidavit in the record that it would be inconvenient, due to his present affairs in Israel, for Stanley Weinstein to travel to Milwaukee for deposition, but there is not evidence that it would be an extraordinary burden.

On the other hand, many if not all of RPM's counterclaims are compulsory. The Trust points out that a claim for indemnification is not compulsory since it does not mature until after the underlying suit is resolved, 3 Moore's *Federal Practice* ¶ 13.32 at 13–821; *Chicago Freight Car Company v. Martin Marietta Corporation*, 66 F.R.D. 400 (N.D.Ill.1975); Rule 13(e) of the Federal Rules of Civil Procedure, and that Stanley Weinstein is a named claimant only on the indemnification claim. But since the indemnification claim depends upon the result in the remainder of the suit and is a matter of application of a contract provision, there is little if any subject matter to discover with regard to that counterclaim. RPM's claims, in contrast, are a far more fruitful source for discovery, and Stanley Weinstein was substantially involved in RPM's performance of its contracts with the Trust. The Seventh Circuit takes a liberal view of what types or series of occurrences may constitute a single "transaction" for purposes of Rule 13(a). *Warshawsky & Company v. Arcata National Corporation*, 552 F.2d 1257, 1261 (7th Cir. 1977). A compulsory counterclaim under Rule 13(a) is any claim arising out of the transaction or occurrence that is the subject of the plaintiff's suit and which is mature at the time of filing the responsive pleading. The Trust argues that all but the one counterclaim involving the 1980 election arose out of events occurring after the takeover was complete. Most of the counterclaims are based upon the agreements entered into between RPM and the Trust and arose as a consequence of the takeover, however, and those agreements also form the basis for the Trust's second claim asserted in its second amended complaint. With the exception of the indemnification claim, the twelfth counterclaim added in May 1981, and the two newly-asserted counterclaims, most of them also were mature before the Weinstein defendants filed their responsive pleadings to the second amended complaint.

██ In sum, although there are some portions of this case for which Stanley Weinstein could be viewed as a party plaintiff or a controlling officer of a party plaintiff, he is primarily in the position of an involuntary defendant. Since he is an officer of RPM and it would be inconvenient but not a great burden for him to travel to Milwaukee, and since he was substantially involved in the events giving rise to this suit, I am satisfied that the plaintiff and the counterclaim defendants should be permitted to require his presence in Milwaukee for deposition if he intends to testify at trial and should not be forced to utilize only written discovery. On the other hand, since he is primarily in the position of a defendant and there is no suggestion that his change of residence was made to avoid testifying, he should not be required to bear the expenses of travel to and from his place of residence solely for a deposition.

During the oral argument on November 18, 1981, the attorney for the Trust and the counterclaim defendants stated that he would be satisfied if Stanley Weinstein were to appear in Milwaukee five weeks before trial for deposition. The Weinsteins' counsel offered to have Stanley appear three weeks before trial. In light of all the circumstances described above, and this being a suitable case for compromise by virtue of Stanley's central role in providing evidence both for the plaintiff's claims and for the Weinsteins' counterclaims, he will be required to appear for deposition in Milwaukee at least four weeks before the scheduled trial date which is April 5, 1982. Naturally the plaintiff may use written discovery in the meantime and may depose him in Israel prior to that date, but if the plaintiff chooses to await his deposition in Milwaukee, Stanley must appear here for deposition no later than four weeks before trial or he will be precluded from testifying at trial.

## ORDER

For the foregoing reasons,

IT IS ORDERED that the plaintiff's and counterclaim defendants' motion for summary judgment on the Weinstein defendants' first counterclaim is granted as to the counterclaim defendants Fisher, Scheckerman, Starnes, and Weitzman, and is denied as to the plaintiff and the remaining counterclaim defendants.

IT IS FURTHER ORDERED that the Weinstein defendants' motion for leave to serve supplemental pleadings is granted.

IT IS FURTHER ORDERED that with regard to Stanley Weinstein's motion for a protective order and the plaintiff's and counterclaim defendants' motion to compel his deposition in Milwaukee, Stanley Weinstein must appear in Milwaukee for deposition no later than four weeks prior to the scheduled trial date, which is currently April 5, 1982, or he will be precluded from testifying at trial.