Jerome A. MAHER, et al., Plaintiffs,

v.

The UNITED STATES, Defendant.

No. 08–12C.

United States Court of Federal Claims.

April 19, 2010.

John O. Tuohy, Chicago, IL, counsel for plaintiffs.

William G. Kanellis, with whom were Deputy Assistant Attorney General Michael F. Hertz, Director Jeanne E. Davidson, and Assistant Director Kenneth M. Dintzer, U.S.

Department of Justice, Civil Division, Commercial Litigation Branch, Washington, DC, counsel for defendant.

## OPINION

WIESE, Judge.

Plaintiffs, former officers and directors of a federal savings and loan association, sue here to recover employment and pension benefits allegedly denied them when the savings and loan was placed into receivership following the enactment of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), Pub.L. No. 101–73, 103 Stat. 183. The case is now before the court on defendant's motion to dismiss the complaint for lack of jurisdiction or, in the alternative, for failure to state a claim upon which relief can be granted. The parties have briefed the issues and the court heard oral argument on March 3, 2010.[1] For the reasons set forth below, defendant's motion to dismiss is granted.

## BACKGROUND

Plaintiffs, John R. Gravee and Jerome A. Maher, served both as directors and as the president and executive vice president, respectively, of First Federal Savings and Loan Association of Wilmette ("First Federal"), a savings and loan association headquartered in Wilmette, Illinois. In 1982, the Federal Home Loan Bank Board and the Federal Savings and Loan Insurance Corpo-

ration ("FSLIC") approached First Federal about a possible merger with several failing thrifts in exchange for the promise of certain regulatory forbearances, including the right to count supervisory goodwill as part of regulatory capital. After a series of negotiations with FSLIC, First Federal's board of directors approved the proposed merger and First Federal accordingly assumed both the assets and the liabilities of the failing thrifts.

■ As part of the negotiations with FSLIC, plaintiffs agreed to continue in office as the president and vice president of the newly created institution, Horizon Federal Savings Bank ("Horizon" or "the bank") and agreed to forgo their existing pension benefits in exchange for pensions to be established by Horizon when the bank achieved solvency. Pursuant to this agreement, Horizon created deferred compensation trusts in 1987 (referred to as "rabbi trusts"[2]) whose assets, although owned by Horizon (and thus reachable by the bank's creditors), were to be paid to plaintiffs upon plaintiffs' termination of employment or death. In 1988, however, Horizon transferred the assets of the rabbi trusts to Harris Trust & Savings Bank ("Harris Trust"), thus creating new trusts (referred to as "secular trusts") whose assets were beyond the reach of Horizon's creditors.

Congress enacted FIRREA on August 9, 1989, and Horizon became one of the many casualties of the statute's prohibition on the use of supervisory goodwill as regulatory

1. Although oral argument in this matter was originally set for September 10, 2008, the court suspended proceedings at the parties' request on September 5, 2008, pending a final decision by the Federal Circuit in *Slattery v. United States*, No. 07–5089— a case raising, among other issues, a jurisdictional question thought to be relevant here: whether the Federal Deposit Insurance Corporation, or FDIC, is a non-appropriated funds instrumentality (*i.e.*, an entity that does not receive its funds from congressional appropriation) and thus not subject to suit in this court. The Federal Circuit issued a decision in *Slattery* on September 29, 2009, holding that Congress did not intend to exclude the FDIC from access to appropriated funds and that this court therefore is not barred from exercising jurisdiction over contract claims against the FDIC. *Slattery v. United States*, 583 F.3d 800, 808–12 (Fed.Cir.2009). On March 19, 2010, however, the Federal Circuit agreed to

rehear the case *en banc* and thus vacated its September 29, 2009, decision. *Slattery*, Nos. 2007–5063, –5064, –5089, 2010 WL 1030729 (Fed.Cir. Mar.19, 2010). Because we now conclude that plaintiffs' claims are barred regardless of the final determination in *Slattery*, we have elected to go forward with this decision.

2. A rabbi trust is a "commonly-used mechanism for deferred compensation and deferred taxation, in which '[f]unds held by the trust are out of reach of the employer, but are subject to the claims of the employer's creditors in the event of bankruptcy or insolvency.'" *Kadillak v. Commissioner*, 534 F.3d 1197, 1201 n. 2 (9th Cir.2008) (quoting *In re IT Group, Inc.*, 448 F.3d 661, 665 (3d Cir.2006)). The term rabbi trust was coined as the result of an IRS Private Letter Ruling involving the funding of such a trust by a synagogue for its rabbi.

capital. On January 11, 1990, the Resolution Trust Corporation ("RTC") was appointed receiver of the now-insolvent institution and plaintiffs' employment contracts were terminated soon thereafter. Following this termination, plaintiffs immediately sought to recover the proceeds of the secular trusts, but the RTC directed Harris Trust to deny their request.

In April 1990, plaintiffs each filed a claim with the RTC seeking severance benefits to which they claimed they were entitled under their employment contracts with Horizon and several of the bank's subsidiaries. In his filing, Mr. Maher specified that his claim did not include "any claim under the deferred compensation agreement or deferred compensation trust between Harris Trust & Savings Bank and Jerome A. Maher, since these benefits are the sole property of Jerome A. Maher and [Horizon] has no right, title, or interest therein." Mr. Gravee's filing, by contrast, contained no such limiting language.

While these claims were pending before the RTC, plaintiffs additionally pursued an action in the United States District Court for the Northern District of Illinois in August 1990 against Horizon, the RTC (as Horizon's receiver), and Harris Trust (as trustee of plaintiffs' deferred compensation accounts). *Maher v. Harris Trust & Sav. Bank*, No. 90 C 5118 ("the *Harris Trust* litigation"). In particular, plaintiffs sought the disbursement of the proceeds contained in the secular trusts. As a defense, the RTC asserted that the trusts represented the transfer of assets made in violation of regulatory requirements. In addition, the RTC filed a counterclaim for the recovery of bonuses that had been paid to plaintiffs in 1989.

In March 1991, plaintiffs received notice from the RTC identifying June 17, 1991, as the cut-off date for asserting claims against the receiver. Accordingly, plaintiffs each filed a second "Proof of Claim" with the RTC on June 14, 1991, offering the following, virtually identical "Description of Claims":

Pursuant to the employment agreement dated June 23, 1987, effective January 1, 1987, as amended, [Maher/Gravee] is entitled to severance benefits upon being discharged from the Horizon Federal Savings Bank in an amount at least equal to [$504, 000.00/$600,000.00] plus interest.

The claims went on to note that "[p]resently pending in the United States District Court for the Northern District of Illinois, in a case styled *Maher, et al. v. Harris Bank, et al.,* Case No. 90 C 5118, is [Maher's/Gravee's] claim for Deferred Compensation under a Trust established by Horizon."

On January 14, 1993, following a bench trial in the *Harris Trust* litigation, the district court ruled in favor of the RTC, invalidating both the secular trusts and the bonuses paid to plaintiffs on the ground that they involved transfers of bank assets that "could lead to material financial loss or damage" to Horizon in violation of 12 C.F.R. §§ 563.39–1 and 563.39(a), respectively. *Maher v. Harris Trust & Sav. Bank*, No. 90 C 5118 (N.D.Ill. Jan. 14, 1993). The court thus held that the assets of the invalidated trusts properly belonged to the RTC as receiver rather than to plaintiffs.

On October 4, 1993, plaintiffs filed a motion for a new trial and additionally sought to amend their complaint to add a claim against the RTC for breach of plaintiffs' employment contracts. The court held an evidentiary hearing on these issues but ultimately denied plaintiffs' motion in its entirety. *Maher v. Harris Trust & Sav. Bank*, No. 90 C 5118, 1994 WL 682625 (N.D.Ill.Dec.5, 1994). With respect to plaintiffs' attempt to assert a breach of contract claim against the RTC, the court observed that the motion was untimely and that plaintiffs had failed to exhaust their administrative remedies under FIRREA. The court explained its conclusion as follows:

For the first time in this litigation, plaintiffs raised their breach of contract claim in their post hearing memorandum of April, 1994. It must fail for several independent reasons, not the least of which is the lack of timeliness with which it has been raised. Plaintiffs have not shown that the tardiness of this claim results from any of the grounds for which relief is available under Rule 60(b), Fed.R.Civ.P.

Even if plaintiffs' claim had been brought in a timely fashion, I remain convinced that I lack jurisdiction to hear that claim. Plaintiffs have not exhausted the administrative claims process provided under FIRREA, 12 U.S.C. § 1821(d). Compliance with these administrative procedures is mandatory; they must be exhausted to provide the district court with subject matter jurisdiction to entertain claims against the RTC.

*Id.* at *2.[3] The court thus denied plaintiffs' motion for a new trial and other relief, although it noted that it "reach[ed] this result unhappily" and "remain[ed] convinced that the result of the trial, though legally correct, is certainly unfair to the plaintiffs." *Id.* at * 3 n. 2.

On appeal, the Seventh Circuit upheld the district court's invalidation of both the secular trusts and plaintiffs' bonuses, as well as the court's conclusion that it lacked jurisdiction over plaintiffs' breach of contract claim. *Maher v. Harris Trust & Sav. Bank,* 75 F.3d 1182, 1190–91 (7th Cir.1996). Observing that "[c]ompliance with the FIRREA process is a strict jurisdictional prerequisite to a claim in federal district court against the receiver," the appeals court found that "plaintiffs took none of the required steps for administrative relief." *Id.* The court made a point, however, to note that its "holding does not suggest that plaintiffs have no vested contractual rights to their deferred compensation. It means only that the property interests plaintiffs acquired as a result of the trusts are void and that the trust assets will be shared by all persons with proper claims against Horizon." *Id.* at 1191.

In June 1995, while the *Harris Trust* appeal was pending, the Federal Deposit Insurance Corporation ("FDIC"), acting in its capacity as receiver for Horizon,[4] brought a separate action against the bank's officers and directors (including plaintiffs) for gross negligence in their approval of certain loans. *FDIC v. Gravee,* No. 94 C 4589 (N.D.Ill.1995) ("*Gravee*"). In a counterclaim filed in that case in October 1995, plaintiffs again sought to recover their employment and pension benefits, alleging that the government had breached its obligation to recognize Horizon's supervisory goodwill as regulatory capital and that their employment contracts had been terminated as a result of Horizon's consequent insolvency. The FDIC ultimately resolved its case against the bank's other officers and directors, thus prompting the district court to transfer plaintiffs' counterclaims to this court in June 1997.

Plaintiffs amended their complaint before this court on February 26, 1998, adding the United States as a defendant but otherwise pleading the same injury that served as the basis for their counterclaim in *Gravee*. Specifically, plaintiffs argued that the government's failure to honor the supervisory goodwill provisions of the merger agreement resulted both in Horizon's insolvency and in the loss of plaintiffs' employment and pension benefits. This court concluded, however, that it did not have jurisdiction over

---

**3.** 12 U.S.C. § 1821(d)(3) confers authority on a receiver to determine claims filed against an insolvent bank. 12 U.S.C. § 1821(d)(5) in turn prescribes the following procedures for making such determinations:

Before the end of the 180–day period beginning on the date any claim against a depository institution is filed with the Corporation as receiver, the Corporation shall determine whether to allow or disallow the claim and shall notify the claimant of any determination with respect to such claim.

If a claimant is dissatisfied with the result of this claims process, the claimant may: (i) request administrative review of the claim through either a hearing before the agency or an alternative dispute resolution process established by the agency (12 U.S.C. § 1821(d)(7)(A) and (B)); (ii) file suit on the claim in district court (12 U.S.C.

§ 1821(d)(6)(A)); or (iii) continue an action in district court commenced before the appointment of the receiver (12 U.S.C. § 1821(d)(6)(A)). The claimant must take such action, however, within 60 days of either: (i) the end of the 180–day period following the filing of a claim with the receiver; or (ii) the date of any notice of disallowance of such a claim, whichever is earlier. 12 U.S.C. § 1821(d)(6)(A). If a claimant fails to take such action within the specified time period, the "claim shall be deemed to be disallowed (other than any portion of such claim which was allowed by the receiver) as of the end of such period, such disallowance shall be final, and the claimant shall have no further rights or remedies with respect to such claim." 12 U.S.C. § 1821(d)(6)(B).

**4.** The FDIC took over from the RTC as the final receiver for the bank on March 7, 1991.

plaintiffs' claims because plaintiffs were neither parties to nor third-party beneficiaries of the government's supervisory merger agreement with First Federal and therefore were not in privity of contract with the United States. The court thus dismissed plaintiffs' case for failure to state a claim upon which relief could be granted. *Maher v. United States,* 48 Fed.Cl. 585 (2001) *("Maher I")*.

On January 1, 2002, the receivership was terminated and Horizon's remaining assets (in the amount of $115,782.79) and certain specified liabilities (totaling $53,837.12) were transferred from the FDIC as receiver to the FDIC in its corporate capacity. The final accounting made no mention of plaintiffs' administrative claims, however, and there is no indication in the record that either the RTC or the FDIC ever responded to them.

The Federal Circuit affirmed this court's dismissal of the suit in December 2002. *Maher v. United States,* 314 F.3d 600 (Fed. Cir.2002) *("Maher II")*. Observing that "Maher and Gravee have not pled sufficient facts to establish that they are intended third-party beneficiaries of the merger agreement between the government and Horizon, or that they have an implied-in-fact contract with the government for employment and pension benefits," the court held that plaintiffs had failed to "establish a cause of action against the government for [plaintiffs'] termination of employment by Horizon or for payment of the proceeds of the deferred compensation trusts." *Id.* at 607.

Despite their unsuccessful appeals to the Seventh Circuit in the *Harris Trust litigation,* 75 F.3d 1182, and to the Federal Circuit in *Maher II,* 314 F.3d 600, plaintiffs made yet another attempt to recover their deferred compensation benefits before the Illinois district court in October 2003, this time seeking payment from Horizon's general assets rather than from the invalidated secular trusts. *Maher v. FDIC,* No. 03 C 6828 (N.D.Ill.2003). The district court dismissed plaintiffs' com-

plaint, however, on the ground that the claims were barred by the doctrine of res judicata and alternatively that plaintiffs had failed to exhaust their administrative remedies as required by FIRREA, 12 U.S.C. § 1821(d), because they had failed to file suit in the district court within the time prescribed by statute. *Maher v. FDIC,* No. 03 C 6828, 2005 WL 388586 (N.D.Ill. Feb.15, 2005) *("Maher III")*. The court explained its reasoning as follows:

> FIRREA sets forth a detailed claims process that requires a claimant to first file a claim with the RTC, which then has 180 days to respond. If the RTC disallows the claim or fails to respond, the claimant has 60 days to file suit. 12 U.S.C. §§ 1821(d)(5)(A)(i), 1821(d)(6)(A). Plaintiffs filed claims with the RTC on April 12, 1990; they filed this lawsuit in October 2003, some 13 years too late.

*Id.* at *4 (footnote and citation omitted).

On appeal, the Seventh Circuit concurred with the trial court that plaintiffs had failed to file suit within the time prescribed by 12 U.S.C. § 1821(d) and that the court therefore could not exercise jurisdiction under FIRREA. *Maher v. FDIC,* 441 F.3d 522, 525 (7th Cir.2006) *("Maher IV")*. The court went on to note, however, that it nevertheless possessed jurisdiction over plaintiffs' claims under ERISA,[5] but found that plaintiffs could not recover on those claims because the receivership had been terminated prior to the filing of the suit and no assets remained to satisfy a judgment in plaintiffs' favor. *Id.* The court explained that "federal courts do not have jurisdiction to review moot cases" (quoting *Buckley v. Archer–Daniels–Midland Co.,* 111 F.3d 524, 526 (7th Cir.1997)) where "there is no possible relief which the court could order that would benefit the party seeking it" (quoting *In re Envirodyne Indus.,* 29 F.3d 301, 303 (7th Cir.1994) (citation omitted)). *Maher IV,* 441 F.3d at 525. Nor, the court concluded, could plaintiffs seek recovery from the FDIC in its corporate capacity because "the FDIC is not liable

---

5. The Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001–1500, was enacted "to protect ... the interests of participants in employee benefit plans and their beneficiaries" by setting out substantive regulatory requirements for employee benefit plans and to "provid[e] for appropriate remedies, sanctions, and ready access to the Federal courts." 29 U.S.C. § 1001(b).

for any other actions taken by the FDIC in its capacity as a receiver" (relying on *FDIC v. Roldan Fonseca,* 795 F.2d 1102, 1109 (1st Cir.1986)), and "the FDIC's corporate liability is limited to the assets of the receivership" (relying on 12 U.S.C. § 1821(i)(2); *First Indiana Fed. Sav. Bank v. FDIC,* 964 F.2d 503, 507 (5th Cir.1992)). *Maher IV,* 441 F.3d at 525–26. The court thus affirmed the lower court's decision, dismissing the action on the ground that the case was moot. *Id.*

In addition, in order to "encourage finality," *id.* at 523, the Seventh Circuit offered a second, alternative ground for affirming the lower court's judgment: that plaintiffs' claims were barred by the doctrine of res judicata. *Id.* at 525–27. In particular, the court noted that plaintiffs were parties to two previous lawsuits that had rendered final judgments on the merits: the *Harris Trust litigation,* 1994 WL 682625, *aff'd* 75 F.3d 1182, and the previous litigation before this court, *Maher I,* 48 Fed.Cl. 585, *aff'd* 314 F.3d 600. The court explained its decision as follows:

> Maher and Gravee pursued or could have pursued claims on the secular and rabbi trusts in these previous cases. Their appellate brief even admits this continuing endeavor, stating that "[f]or 15 years of litigation, [Maher and Gravee] have sought to enforce these contractual rights." Under the doctrine of res judicata, Maher and Gravee are not entitled to seek repeatedly the pension funds on marginally different theories. Therefore, even if this case presented a justiciable case or controversy, their claims would be barred by the doctrine of res judicata.

*Maher IV,* 441 F.3d at 527.

Plaintiffs filed the present action on January 2, 2008. Although plaintiffs continue to seek "written contract retirement and severance benefits" allegedly owed them by Horizon, they have now restyled their theory of recovery, claiming that the FDIC failed to notify them of the termination of the receivership and breached its fiduciary duty to plaintiffs by effecting a transfer of Horizon's assets that did not result in a ratable distribution to Horizon's creditors. Based on this theory of recovery, plaintiffs now seek their severance pay as well as the value of their ERISA claims, which they calculate as $8,000 per month for Mr. Maher and $10,000 per month for Mr. Gravee since each reached his written employment contract retirement age of 65.

## DISCUSSION

Plaintiffs' argument begins with 12 U.S.C. § 1823(d)(3)(C), a section of FIRREA that imposes a fiduciary duty on the FDIC to an insolvent institution's creditors. 12 U.S.C. § 1823(d)(3)(C), titled "Fiduciary responsibility," specifically provides as follows:

> In exercising any right, power, privilege, or authority described in subparagraph (A) [conferring on the FDIC all of the rights, powers, privileges, and authorities possessed by the FDIC as receiver under sections 1821 and 1825(b)], the Corporation shall continue to be subject to the fiduciary duties and obligations of the Corporation as receiver to claimants against the insured depository institution in receivership.

Plaintiffs contend that among the duties owed to creditors is an obligation to make a pro rata payment of their claims, a requirement, plaintiffs observe, that was discussed at length by the Ninth Circuit in *First Empire Bank–New York v. FDIC,* 572 F.2d 1361 (9th Cir.1978). In *First Empire,* the FDIC, acting as the receiver for an insolvent bank, arranged for the merger of the bank with a healthy institution. In order to entice the acquiring bank to accept the merger, however, the FDIC agreed not to transfer certain of First Empire's liabilities that were deemed questionable. The creditors to whom those unassumed liabilities were owed brought suit, arguing that the resulting purchase and assumption agreement amounted to a distribution of assets and that the distribution was not "ratable" as required by 12 U.S.C. §§ 91 and 194 since not all of the creditors received their proportionate share of the bank's assets. *Id.* at 1361.[6]

---

**6.** 12 U.S.C. § 194 (1976), a provision of the National Banking Act, required the ratable payment of claims as follows:

The Ninth Circuit ruled in the creditors' favor, agreeing that the transfer of all of the bank's assets but only certain of its liabilities amounted to a non-ratable distribution. The court explained its reasoning as follows:

> In our judgment it could not have been the congressional intent, upon balance, to have the fiscal integrity of the deposit insurance fund (which can be adequately protected by other more equitable means) outweigh the policy of equitable and ratable payment of creditors in this manner and to permit the FDIC, whenever it felt its action to be reasonable and to serve to protect the deposit insurance fund against loss, to prefer some creditors over others paying some in full while others received little or nothing.

*Id.* at 1371.

The court went on to observe that a purchase and assumption agreement does not have to include every creditor in order to be valid, but noted that it was incumbent on the FDIC to ensure that sufficient assets remain in the receivership to allow "distribution to unassumed creditors equal to that undertaken by the acquiring bank as to the creditors it has accepted." *Id.* The court further held that the FDIC must "stand ready to render the distribution ratable to supplement the remaining assets should they fall short and to surrender its lien when necessary." *Id.* The court thus concluded as follows:

> [T]he responsibility lies on the FDIC under [12 U.S.C.] § 194 to compensate appel-

lants for its failure as Receiver to make distributions ratably. Had it insisted that these appellants be included in the purchase and assumption agreement as creditors with claims assumed by [the acquiring bank], as it should have done, it would then have had to satisfy [the acquiring bank] by adding to the amount borrowed from the Corporation and paid to [the acquiring bank] the full amount of the claims. That sum appellants are now entitled to receive from the FDIC.

*Id.*

Plaintiffs read the holding in *First Empire* as creating a new cause of action in their favor—one that arose when the receivership was terminated without the FDIC's first paying them their employment and pension benefits in accordance with 12 U.S.C. § 1823(d)(3)(C). Plaintiffs argue that here, as in *First Empire*, the FDIC had a fiduciary duty to plaintiffs, as creditors of Horizon, to distribute the bank's remaining assets to them ratably. Plaintiffs assert that the FDIC's preference for some creditors to the total exclusion of others violated this duty, giving rise to an action properly asserted against the United States that is entirely separate from and independent of plaintiffs' earlier lawsuits involving their employment claims. Plaintiffs contend that having failed to identify plaintiffs as unpaid creditors in the purchase and assumption agreement, the FDIC in its corporate capacity must now pay plaintiffs the full amount of their claims.[7]

---

From time to time, after full provision has been first made for refunding to the United States any deficiency in redeeming the notes of such association, the comptroller shall make a ratable dividend of the money so paid over to him by such receiver on all such claims as may have been proved to his satisfaction or adjudicated in a court of competent jurisdiction. . . .

12 U.S.C. § 91 (1976) in turn prohibited preferring one creditor over another creditor as follows:

[A]ll payments of money ... made after the commission of an act of insolvency, or in contemplation thereof, made with a view to prevent the application of its assets in a manner prescribed by this chapter, or with a view to the preference of one creditor to another ... shall be utterly null and void. . . .

**7.** Plaintiffs' argument of course assumes that plaintiffs had in fact established themselves as

creditors of Horizon, an assertion defendant vigorously denies. Although various courts have held that plaintiffs failed to satisfy the claims process under FIRREA (*see e.g.,* the *Harris Trust* litigation, 75 F.3d at 1190–91 (concluding that plaintiffs could not assert a claim against the RTC for breach of their employment contracts because they had not first submitted such claims to the receiver under § 1821(d)); *Maher IV,* 441 F.3d at 525 (concluding that plaintiffs had not satisfied the § 1821(d) administrative claims process with respect to their claims for pension trust funds because they sought appeal in district court more than a year after the termination of the receivership and more than a decade after they claimed to have filed administrative claims)), plaintiffs nevertheless argue that they had legitimate claims pending before the receiver on the date of the receivership's termination. In support of this argument, plaintiffs maintain that they filed administrative claims with the receiver

■ Defendant contends that plaintiffs' claims are barred by the doctrine of res judicata. Under that doctrine, a party may not relitigate an issue that was raised or could have been raised in a previous action that resulted in a final judgment on the merits. *Federated Dep't Stores, Inc. v. Moitie,* 452 U.S. 394, 398, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981); Restatement (Second) of Judgments § 19 (1982). In order to establish the doctrine's applicability, a litigant must prove: (i) that the parties in the original and subsequent actions are identical or are in privity; (ii) that a final judgment was reached on the merits of the earlier claim; and (iii) that the subsequent claim is based on the same set of transactional facts as the first. *Int'l Air Response v. United States,* 302 F.3d 1363, 1368 (Fed.Cir.2002). Defendant argues that plaintiffs unsuccessfully pursued their claims in the *Harris Trust* litigation, in *Gravee,* and in *Maher I–IV,* and therefore should be precluded from relitigating them here.

■ Defendant, we believe, has satisfied its burden. Plaintiffs have attempted to recover the sums they now seek on no fewer than four occasions, the most recent of which, before the Illinois district court and the Seventh Circuit in *Maher III* and *Maher IV,* addressed the very issue presented here: whether plaintiffs may recover on their employment claims as unsecured creditors of the bank following the January 1, 2002, termination of the receivership. *Maher III,* 2005 WL 388586; *Maher IV,* 441 F.3d 522. The Seventh Circuit rejected plaintiffs' claims on multiple grounds, including that they were moot and were barred by the doctrine of res judicata. *Maher IV,* 441 F.3d at 525–26. In particular, the Seventh Circuit found that plaintiffs' claims for pension trust

funds, although allegedly submitted to the receiver, had not been pursued before the district court in a timely fashion, with the result that the court could not exercise jurisdiction under FIRREA. *Id.* at 525. The Seventh Circuit additionally found that relief was unavailable because 12 U.S.C. § 1821(i)(2) limited recovery by a bank's creditors to the assets in the receivership and no such assets remained to pay plaintiffs' claims. *Id.* Finally, the court determined that plaintiffs could not recover as unsecured creditors because their claims were barred by the doctrine of res judicata. *Id.* at 525–26. That decision, we believe, necessarily ends our inquiry.

All of the arguments plaintiffs put forward in this case were available to them in *Maher III* and *Maher IV.* Plaintiffs were parties to that litigation, a final judgment was entered against them in those cases, and the claims at issue here—the pursuit of "written contract retirement and severance benefits" following the termination of the receivership—arise from the same set of transactional facts at issue before those courts. The test for res judicata has been met. As the district court noted in *Maher III:*

> Plaintiffs could have asserted the vested contract and ERISA claims in the earlier cases as alternative theories of recovery. Indeed, this is common practice in litigation where, as Plaintiffs discovered, courts do not always agree with a party's primary theory of relief. Plaintiffs chose not to raise their current claims, which arise out of the same core of operative facts as the earlier ones, and cannot now be allowed a "second bite of the apple."

*Maher III,* 2005 WL 388586, at *4.

Unsurprisingly, plaintiffs resist this conclusion. Plaintiffs contend that res judicata is

---

in 1990 and 1991 as required by 12 U.S.C. § 1821(d) and continued to pursue the subject matter of those claims in the *Harris Trust* litigation as permitted by 12 U.S.C. § 1821(d)(6)(A). Plaintiffs further maintain that the RTC opted out of the administrative process by continuing its participation in the *Harris Trust* litigation, thereby signaling its intention to address plaintiffs' claims in court rather than at the administrative level. And it was in the context of this litigation, plaintiffs argue, that the RTC recognized their claims by acknowledging that it was "not challenging the deferred compensation agreement that the plaintiffs had with Horizon in terms of

the claims against the estate." Indeed, plaintiffs maintain that the Seventh Circuit endorsed such a determination when it noted that its holding did not "suggest that plaintiffs have no vested contractual rights to their deferred compensation" but only that "the property interests plaintiffs acquired as a result of the trusts are void and that the trust assets will be shared by all persons with proper claims against Horizon." *Harris Trust,* 75 F.3d at 1191. Plaintiffs argue that these facts, taken together, establish that their claims had been allowed—but remained unpaid—on the date of the receivership's termination.

inapplicable to their claims because the courts that issued the previous rulings were not courts of competent jurisdiction (as evidenced by their dismissals for lack of jurisdiction) and therefore their rulings should not be given preclusive effect. *Montana v. United States,* 440 U.S. 147, 153, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979). Res judicata is further inapplicable, plaintiffs maintain, because the claims they now seek to litigate were not addressed by the earlier courts but instead arose on January 1, 2002, with the termination of the receivership and therefore are not based on the same set of transactional facts as the previous claims. Finally, plaintiffs observe that the Supreme Court has endorsed the redetermination of issues "if there is reason to doubt the quality, extensiveness, or fairness of procedures followed in prior litigation," *id.* at 163–64, n. 11, 99 S.Ct. 970, a principle plaintiffs contend applies here because they were not given a full and fair opportunity to litigate their claims in the earlier cases.

 Plaintiffs' arguments are unavailing. As an initial matter, the fact that earlier courts dismissed plaintiffs' claims for lack of jurisdiction does not preclude the application of res judicata. As this court observed in *Lowe v. United States,* 79 Fed.Cl. 218, 229 (2007), "a dismissal for lack of subject matter jurisdiction retains some preclusive effect, but only bars those matters that have been actually litigated—typically, the specific jurisdictional issue(s) that mandated the initial dismissal" (relying on *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 326 n. 5, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979), for the proposition that "the judgment in the prior suit precludes relitigation of issues actually litigated and necessary to the outcome of the first action"). Further, as the Federal Circuit explained in *Spruill v. Merit Sys. Prot. Bd.,* 978 F.2d 679, 687 (Fed.Cir.1992):

> To the extent a successful claim against the government requires compliance with all statutory elements of the claim, failure of proof of an element of the cause of action means the petitioner is not entitled to the relief he seeks. To conclude in such a case that the petitioner loses because the forum is "without jurisdiction" is to obscure the nature of the defect. It would be more accurate to conclude that the petitioner has failed to prove the necessary elements of a cause for which relief could be granted.

Although the *Maher IV* court concluded that it lacked jurisdiction over plaintiffs' claims, it did so on the ground that plaintiffs had failed to comply with FIRREA's administrative claims process and that the absence of assets in the receivership rendered plaintiffs' claims moot. *Maher IV,* 441 F.3d at 525. The court thus ruled explicitly on the very issues plaintiffs would have us redetermine here: the ongoing viability of their claims as unsecured creditors of Horizon and the solvency of the receivership on the date of its termination. As those findings were essential to the *Maher IV* court's ultimate ruling that it did not possess jurisdiction, we conclude that they must be the final word on the matter.

This conclusion is bolstered by the holding in *Edgar v. United States,* 145 Ct.Cl. 9, 171 F.Supp. 243 (1959), a case in which this court was asked to determine whether the district court's finding that a plaintiff had failed to exhaust her administrative remedies should be given preclusive effect when the district court ultimately ruled that it had no jurisdiction on that ground. In that context, the *Edgar* court wrote the following language which we find to be directly on point here:

> [W]e are of opinion that [plaintiff] is estopped by the decision of the district court. [Plaintiff] cannot secure a money judgment from us unless we hold, contrary to the holding of the district court, that she did exhaust her administrative remedy or that she is excused for some reason for not having done so. Since the question has been decided adversely to her by a court of competent jurisdiction, a forum selected by her, public policy precludes her from relitigating the same question here. She has already had her day in court. Defendant is entitled to be protected from the harassment of having to defend a question already decided by a court of competent jurisdiction. Dignity and respect for judicial proceedings require it; tranquility and repose, an end to strife, demand it; the

interest of other litigants seeking to be heard necessitates it.

*Id.* at 12, 171 F.Supp. 243.

Plaintiffs' second argument—that the January 1, 2002, termination of the receivership created a new cause of action—ignores the fact that their suit in *Maher III* was filed in October 2003 and thus involved facts identical to those presented here. Plaintiffs in fact have acknowledged that they learned of the termination of the receivership during the course of *Maher III* and *Maher IV.* The underlying issue—plaintiffs' employment benefits—remains the same and plaintiffs' instant suit is thus based on the same set of transactional facts. *Clark v. Taylor,* 163 F.2d 940, 942–43 (2d Cir.1947) (defining a " 'transaction' of 'occurrence' " as "the subject matter of a claim, rather than the legal rights arising therefrom; additions to or subtractions from the central core of fact do not change this substantial identity"); Restatement (Second) of Judgments § 25 (1982) (recognizing that a claim is extinguished even though "the plaintiff is prepared in the second action ... [t]o present evidence or grounds or theories of the case not presented in the first action"). Plaintiffs cannot revive their claims by repackaging them.

Finally, we do not believe that plaintiffs' situation is the type to which the Supreme Court was referring in *Montana,* 440 U.S. at 163–64, 99 S.Ct. 970, when it allowed for the redetermination of issues where there was "reason to doubt the quality, extensiveness, or fairness of procedures followed in prior litigation." Plaintiffs argue that despite their attempts in the *Harris Trust* litigation to revive the rabbi trusts or to amend their complaint to add an action for the breach of their employment contracts, they were not permitted in that suit to pursue the sums allegedly owed them as unsecured creditors. In addition, plaintiffs maintain that the resolution of this issue in *Maher IV* was flawed because contrary to the Seventh Circuit's determination that no assets remained to satisfy a judgment in plaintiffs' favor, the

receivership contained $115,782.79 in assets and a possible Winstar-type claim upon its termination.[8] Plaintiffs thus argue that because the factual predicate of the court's conclusion was in error, its holding that plaintiffs' claims were moot should be given no effect. Such a challenge, however, is a classic attempt to wage a collateral attack on another court's holding and is not, as was envisioned by the *Montana* Court, an indication that plaintiffs were deprived a full and fair opportunity to make their case. *See* Restatement (Second) of Judgments § 19 cmt. a (1982) (requiring that "errors underlying a judgment be corrected on appeal or other available proceedings to modify the judgment or to set it aside, and not made the basis for a second action on the same claim").

## CONCLUSION

We are sympathetic to the fact that plaintiffs have sought recovery of their employment and pension benefits on multiple occasions with no relief. We also recognize the frustration likely associated with pursuing a process that may at times have seemed less than clear. Plaintiffs cannot, however, continue to relitigate claims already decided against them. For the reasons set forth above, defendant's motion to dismiss is granted. The Clerk is directed to enter judgment accordingly. No costs.

---

**8.** Plaintiffs additionally contend that *Slattery,* 583 F.3d 800, supersedes the Seventh Circuit's determination that any recovery against the FDIC must be limited to the assets of the receivership. While we do not agree with plaintiffs' reading of

that case, we note that the decision has been vacated, Nos.2007–5063, –5064, –5089, 2010 WL 1030729, and would not have retroactive application in any event.