**Sandra BUCKLEY, IRA,**
**Plaintiff–Appellant,**

**v.**

**ARCHER–DANIELS–MIDLAND COMPA-NY, Dwayne O. Anreas, Michael D. Andreas, et al., Defendants–Appellees.**

**No. 96–2592.**

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 26, 1996.

Decided April 14, 1997.

Edward F. Haber, argued, Andrew A. Rainer, Christine E. Morin, Shapiro, Grace, Haber & Urmy, Boston, MA, Richard Vita, Boston, MA, for Sandra Buckley, IRA.

James E. Peckert, A. James Shafter, Deanne F. Jones, Kehart, Shafter, Hughes & Webber, Decatur, IL, Aubrey M. Daniel, III, Nancy F. Lesser (argued), George A. Borden, Williams & Connolly, Washington, DC, for Archer–Daniels–Midland Company.

James E. Peckert, A. James Shafter, Deanne F. Jones, Kehart, Shafter, Hughes & Webber, Decatur, IL, Thom Moss, Wilson, Dyar & Moss, Decatur, IL, for Dwayne O. Andreas, Michael D. Andreas, Lowell W. Andreas, Martin L. Andreas.

Before ESCHBACH, COFFEY, and MANION, Circuit Judges.

MANION, Circuit Judge.

Sandra Buckley filed a class action lawsuit against Archer–Daniels–Midland Company and its directors, alleging they violated the Securities Exchange Act of 1934 and SEC Rules by omitting material facts from a proxy statement issued for the 1995 annual meeting at which shareholders would elect directors to ADM's board. Because the officers elected at the 1995 annual meeting have completed their one-year terms and another election has since taken place, this case is moot.

## I. Background

Sandra Buckley has an individual retirement account which owns stock in Archer–Daniels–Midland ("ADM"). This entitles her to vote for directors at ADM's annual shareholder meetings. On September 13, 1995, ADM sent proxy statements to its shareholders seeking shareholders' proxies in favor of reelecting all seventeen of ADM's directors at its upcoming October 15, 1995 annual meeting. All of the directors were reelected.

Sandra Buckley was displeased with the process and the result. She believed that ADM omitted material facts from the September 13, 1995 proxy statements which if disclosed would have altered the 1995 election. Accordingly, she filed a class action suit against ADM and each of the directors holding office in 1995 and reelected at the annual meeting, alleging the defendants violated sections 14(a) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78 and Securities and Exchange Commission Rule 14a–9.

Rule 14a–9, promulgated pursuant to section 14(a), provides, in relevant part:

> No solicitation ... shall be made by means of any proxy statement ... written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading.

17 C.F.R. § 240.14a–9.

Buckley alleged that the September 13, 1995 proxy statement contained material omissions, specifically, that it failed to disclose that Michael Andreas, one of the directors whom the shareholders were being asked to re-elect to the ADM board, was the subject, if not the target, of a federal grand jury investigation of price-fixing by ADM and its competitors; that Howard Buffett, a former ADM director and corporate spokesman for ADM, had resigned as an officer and director of ADM because he had lost confi-

dence in the other directors; that Gaylord Coan, one of the directors the shareholders were being asked to reelect, had been appointed by a vote of the other board members after Howard Buffet resigned; and that James Randall, ADM President and one of the directors the shareholders were asked to re-elect, had been accused by a former top ADM executive of approving millions of dollars in unreported compensation to corporate officers. Buckley sought declaratory and injunctive relief: a declaration that the 1995 proxy statement contained material omissions, and an order that ADM hold a special election so the plaintiff and the class could elect a new board of directors pursuant to proxy statements issued and approved by the court.

ADM and the director defendants moved to dismiss the class action for failure to state a claim. The district court certified the class action and then granted defendants' motion to dismiss concluding that the omissions from the September 13, 1995 proxy statement were not material and therefore did not violate the SEC Act and SEC Rules. Buckley appealed. We heard oral argument on September 26, 1996. Coincidentally, on that same day ADM issued a proxy statement seeking proxies to be voted at the October 17, 1996 annual meeting. On October 17, 1996, ADM held its annual meeting and elected a twelve-member board of directors to replace the seventeen-member board elected in October 1995. Cognizant of this new election, we ordered the parties to file supplemental briefs explaining whether Buckley's class action challenging the 1995 proxy statement and election is moot. We have reviewed the supplemental briefs and conclude that this case is moot.

## II. Analysis

"Under Article III of the Constitution, the exercise of federal judicial power depends on the existence of a justiciable case or controversy; federal courts do not have jurisdiction to review moot cases." *Commodity Futures Trad. Comm'n v. Hunt*, 591 F.2d 1211, 1224 (7th Cir.1979) (citing *Liner v. Jafco, Inc.*, 375 U.S. 301, 306 n. 3, 84 S.Ct. 391, 394, 11 L.Ed.2d 347 (1964)). "This re-

quirement extends throughout the pendency of an action, not just at the time a case is filed." *Board of Educ. of Downers Grove Grade Sch. No. 58 v. Steven L.*, 89 F.3d 464, 467 (7th Cir.1996). "In general, a case becomes moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Stewart v. Taylor*, 104 F.3d 965, 969 (7th Cir.1997).

In this case, the issues presented in Buckley's complaint no longer exist. Buckley's "action challenge[d] the re-election of each of the seventeen Individual Defendants in this action as Director of the defendant Archer–Daniels–Midland at its October 19, 1995 annual meeting." Her challenge asserted that the 1995 proxy statement, which solicited proxies for the reelection of ADM's board of directors at the 1995 annual meeting, contained material omissions. The directors elected at the 1995 annual meeting were elected to serve one-year terms. Those one-year terms have expired. Once ADM issued its 1996 proxy statement and held a new election at its October 1996 annual meeting, the dispute over the 1995 election became irrelevant. Even if the 1995 election were invalid because the proxy statements contained material omissions, this court has no remedy to grant Buckley because the directors elected in 1995 either no longer serve as directors, or were reelected in 1996 based on new proxy statements.

Buckley seems to accept this point because in her supplemental brief she no longer questions the 1995 proxy statement; instead she argues that the dispute is still alive because the 1996 proxy statement suffers from the same infirmities as did the 1995 proxy statement. Thus, she proceeds as if the action before the court is a challenge to the 1996 proxy statement. But Buckley's complaint did not allege a violation of securities law based on the 1996 proxy statement (and for obvious reasons-no such statements existed and no election had yet occurred). Nor did her complaint allege generally that a proxy statement must disclose the reason for a director's resignation, or that a director seeking reelection is under investigation; her complaint specifically challenged the 1995 proxy statement and the 1995 election.

Buckley also has not sought leave to amend her complaint to allege a claim based on the 1996 proxy statement and election, nor is that issue properly before the court. *See Wisconsin Real Estate Investment Trust v. Weinstein,* 530 F.Supp. 1249, 1251–52 (E.D.Wis.1982) (court granted motion to amend complaint which alleged proxy violations in 1980 following 1981 election; amended complaint alleged proxy violations in 1981). Thus, the only question properly before the court—the validity of the 1995 proxy statement—is no longer viable. *See Smillie v. Park Chemical Co.,* 466 F.Supp. 572, 575 (E.D.Mich.1979), *aff'd,* 710 F.2d 271 (6th Cir. 1983) (concluding that allegations concerning the election of officers in 1973 and 1974 are moot because those officers have completed their terms, so injunctive relief at this point in time would be meaningless); *Lee v. Schmidt–Wenzel,* 766 F.2d 1387, 1390 (9th Cir.1985) ("The declaratory and injunctive relief requested could no longer affect the composition of the board because the new board had been duly elected by the stockholders."); *Maldonado v. Flynn,* 597 F.2d 789, 797 n. 10 (2d Cir.1979) ("Directors of Zapata are elected to three-year terms. The terms of those elected in 1975 have expired, rendering moot the question of the validity of that election."); *Sanders v. Thrall Car Mfg. Co.,* 582 F.Supp. 945, 956–57 (S.D.N.Y.1983), *aff'd* 730 F.2d 910 (2d Cir.1984) (concluding that shareholder-plaintiff suit alleging securities violations based on alleged omissions from proxy statements was moot because the directors' one-year terms had lapsed and plaintiff did not assert any pecuniary harm).[1]

Nonetheless, we could decide this case if it fit within the "capable of repetition yet evading review" exception to the mootness doctrine. "To fall within this exception, the alleged injury must be of inherently limited duration and likely to happen again to the same complaining party." *Board of Educ. of Downers Grove,* 89 F.3d at 467. However, Buckley's case does not fit within this exception. Even assuming her claim is inherently transitory, "there is no reasonable expectation, much less a demonstrated probability, that the same controversy will recur" between Buckley and ADM. *Id.* at 468. In fact, the 1996 election demonstrates the opposite. In 1996, neither James Randall nor Michael Andreas sought reelection to ADM's board of directors, so not only is Buckley's claim that ADM's failure to disclose information about Randall and Andreas in the 1995 proxy statement unlikely to recur, it could not recur. Buckley also complained that the 1995 proxy statement omitted the fact that Buffet resigned from the board of directors because he lacked confidence in the directors seeking reelection at the October 1995 annual meeting. Buffet's resignation is not only an event unlikely to recur, it could not recur. Moreover, Buckley alleged that Buffet resigned because he lost confidence in the directors seeking reelection in 1995, but eight of those directors did not seek or obtain reelection in 1996, and the board itself was reduced from seventeen to twelve members. That Buffet may have disapproved of the 1995 board cannot be deemed a continuing disapproval of a smaller and different board. Finally, Buckley complained that the 1995 proxy statement failed to disclose that Gaylord Coan was elected in 1995 to replace Howard Buffet. This is not a dispute that could recur unless Buffet is reelected to the board and then again resigns—a highly unlikely sequence. *See, e.g., Lee,* 766 F.2d at 1389–90 (holding that a subsequent shareholder election mooted a challenge to an earlier election and that the "capable of repetition, yet evading review" exception to the mootness doctrine was inapplicable because it was highly unlikely that the same dispute would again occur.).[2]

**1.** *Seibert v. Sperry Rand Corp.,* 586 F.2d 949, 951 (2d Cir.1978), is distinguishable. In *Seibert,* the Second Circuit concluded that because the plaintiffs sought an injunction restraining a director "from sitting on the Sperry Board unless and until he shall be elected thereto pursuant to a proper and lawful shareholder vote," the dispute between the parties was not moot.

**2.** In *General Elec. Co. by Levit v. Cathcart,* 980 F.2d 927, 934 (3d Cir.1992), the court concluded that a new election of directors moots the claim, unless "there is a real threat of recurrence." This rationale seems to fall under the "capable of repetition, yet evading review" exception. *See also Weinstein,* 530 F.Supp. at 1251–52 ("As to the claims for injunctive and declaratory relief against the Trust and those persons allegedly

Because the validity of the 1995 proxy statement no longer presents a live controversy given the subsequent issuance of proxy statements in 1996 and a new election of directors in 1996, this case is dismissed as moot.

directing its policies and responsible for the proxy materials, the first counterclaim, by virtue of the alleged recurrence of abuses during the 1981 election, is not moot."). As explained above, this case is not one where there is a "real threat of recurrence."