# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | |
|---|---|
| JERALD HAMMANN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) C.A. No. 2021-0506-PAF |
| ADAMIS PHARMACEUTICALS | ) |
| CORPORATION, DENNIS J. CARLO, | ) |
| RICHARD C. WILLIAMS, HOWARD C. | ) |
| BIRNDORF, ROSHAWN A. BLUNT, and | ) |
| DAVID J. MARGUGLIO, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

Date Submitted: May 1, 2023
Date Decided: August 23, 2023

Jerald Hammann, Plaintiff, *pro se*.

Rolin P. Bissell, James M. Yoch, Jr., Alberto E. Chávez, YOUNG CONAWAY STARGATT & TAYLOR, LLP, Wilmington, Delaware; Michael C. Holmes, Robert P. Ritchie, Jeremy R. Gonzalez, VINSON & ELKINS L.L.P., Dallas, Texas; *Attorneys for Defendants.*

**FIORAVANTI, Vice Chancellor**

Plaintiff Jerald Hammann commenced this action in June 2021, several weeks after Adamis Pharmaceutical Corporation ("Adamis" or the "Company") rejected his director nominations and stockholder proposals for consideration at the 2021 annual meeting of stockholders. The Company rejected the nominations and proposals because they were delivered after the deadline provided in the Company's advance notice bylaw. The court denied Hammann's application to enjoin the 2021 annual meeting, but agreed to hold an expedited trial on his colorable claim under *Schnell v. Chris-Craft Industries, Inc.*, 285 A.2d 437 (Del. 1985), alleging that the Company had inequitably scheduled the meeting and buried its announcement in an annual report with the purpose of thwarting Hammann's efforts. The court suggested a trial in September 2021 and noted that if Hammann were to prevail, the court could either require Adamis to conduct a new 2021 annual meeting that would include Hammann's slate and proposals or, alternatively, compel the Company to include Hammann's slate and proposals on the ballot for the 2022 annual meeting.

After obtaining expedited proceedings and an opportunity for a prompt trial, Hammann did not press his case. He delayed in responding to the defendants' scheduling proposals and never presented a schedule to the court. Then, starting in March 2022, Hammann filed serial motions to enjoin Adamis and its directors from filling vacancies and convening the 2022 annual meeting. By that time, Hammann was free to submit his proposals and nominees for election at the 2022 meeting, but

for unexplained reasons, he chose not to do so. Hammann also sought to amend and supplement his complaint. The court denied Hammann's injunction applications, but permitted him to amend his complaint. Due to Plaintiff's torpor, the court declined a last-minute bid to bifurcate the case and to hold a trial on Hammann's *Schnell* claim in advance of the fast-approaching 2022 annual meeting.

On March 16, 2023, the court held a trial on a paper record and heard argument on the defendants' motions to dismiss and for summary judgment. Thereafter, Hammann filed a second motion for sanctions, and the defendants filed a motion to compel Hammann to comply with an earlier fee-shifting order. In this post-trial opinion, the court concludes that Hammann's claims are largely moot and otherwise do not establish damages or a right to other relief.[1]

---

[1] The court will address the remaining motions for sanctions and contempt in a separate order.

## I. BACKGROUND

These are the facts as the court finds them after trial.[2]

### A. Parties

Jerald Hammann is an investor and activist stockholder who resides in Minnesota. He is no stranger to litigation in Delaware and beyond, and he frequently represents himself.[3]

---

[2] After being identified initially, individuals are referenced herein by their surnames without regard to formal titles such as "Dr." No disrespect is intended. Unless otherwise indicated, references to the parties' briefs refer to the parties' pretrial briefs. Citations in the form "PX" refer to the exhibits attached to the Hammann affidavits, as attached to Plaintiff's opening and reply pretrial briefs. Dkts. 107–109, 123. References to "Hammann Aff." refer to the Affidavit of Jerald Hammann re: Facts Supporting Claims filed in tandem with Plaintiff's Opening Pretrial Brief. Dkt. 109. Citations in the form "DX" refer to the exhibits attached to Defendants' pretrial answering brief. Dkts. 119–120. Facts drawn from the parties' Pre-Trial Stipulation and Order are cited as "PTO ¶ #." Dkt. 106.

[3] *See Hammann v. CytRx Corp.*, C.A. No. 2021-0676-PAF (Del. Ch.) (appearing *pro se* and seeking a temporary restraining order and expedited proceedings); *Hammann v. LadRx Corp.*, C.A. No. 2022-1101-PAF (Del. Ch.) (appearing *pro se* and seeking specific performance); *see also Hammann v. Deyo*, 2010 WL 154212 (Minn. Ct. App. Jan. 19, 2010); *Hammann v. Falls/Pinnacle, LLC*, 562 U.S. 1198 (2011); *Hammann v. Falls/Pinnacle, LLC*, 562 U.S. 1272 (2011); *Hammann v. Wells Fargo Bank, N.A.*, 141 S.Ct. 368 (2020); *Hammann v. 1-800 Ideas, Inc.*, 690 F. App'x. 956 (9th Cir. 2017); *Hammann v. Schwan's Sales Enters., Inc.*, 2004 WL 1049170 (Minn. Ct. App. May 11, 2004); *Hammann v. Sexton Lofts, LLC*, 136 S.Ct. 2023 (2016); *Hammann v. 1-800 Ideas, Inc.*, 138 S.Ct. 2609 (2018); *Hammann v. Wells Fargo Bank, N.A.*, 138 S.Ct. 482 (2017); *Streambend Props. II, LLC v. Ivy Tower Minneapolis, LLC*, 577 U.S. 808 (2015); *Streambend Props., LLC v. The Carlyle Condos, LLC*, 2010 WL 11534596 (D. Minn. Aug. 3, 2010); *Hammann v. Turnstone Calhoun L.L.C.*, 2008 WL 2885800 (Minn. Ct. App. July 29, 2008); *Streambend Props. II, LLC v. Ivy Tower Minneapolis, LLC*, 2017 WL 66381 (D. Minn. Jan. 6, 2017), *aff'd*, 701 F. App'x 544 (8th Cir. 2017); *Streambend Props. II, LLC v. Ivy Tower Minneapolis LLC*, 2019 WL 2332409 (Minn. Ct. App. June 3, 2019), *cert. denied*, 140 S.Ct. 1118 (2020). In one action, Hammann was adjudicated as a

3

A few years ago, Hammann developed a business model of approaching struggling biotechnology or biopharmaceutical companies to propose reforms and a consulting arrangement for himself. Should the company decline Hammann's modest proposal, he floats the prospect of running a proxy contest. His business model has, in some respects, proved lucrative. For example, in early 2020, Hammann initiated a proxy contest against CytRx Corporation ("CytRx").[4] CytRx entered into a "Cooperation Agreement" with Hammann, under which he agreed to terminate the proxy contest for payment of $275,000 and certain corporate reforms.[5]

In January 2021, Hammann approached Advaxis, Inc. ("Advaxis"). After Hammann mentioned a possible proxy contest, Advaxis promptly retained Hammann's private consulting firm for $150,000 and other contingent payments.[6] Hammann and his consulting firm were not asked to provide any consulting services after they executed the agreement.[7] After inking his deal with Advaxis, Hammann

---

"frivolous litigant" under the Minnesota practice rules, resulting in the imposition of preconditions before he could file new claims. *See Deyo*, 2010 WL 154212, at *7–8 (affirming trial court ruling that Hammann was a frivolous litigant). A frivolous litigant is defined under the Minnesota rules as one "'who, after a claim has been finally determined against the person, repeatedly relitigates or attempts to relitigate either' finally-determined matters or one who maintains claims not well-grounded in law." *Id*. at *7 (quoting Minn. Gen. R. Pract. 9.06(b)(1), (3)).

[4] PTO ¶ 10.

[5] *Id.* ¶ 11; DX 1 at 135:1–12 (Hammann).

[6] PTO ¶¶ 12–13; DX 1 at 121:2–20 (Hammann).

[7] DX 1 at 128:25–129:17 (Hammann).

immediately set his sights on Adamis, a Delaware corporation focused on developing and commercializing products for therapeutic use. At that time, the Adamis board consisted of Dennis J. Carlo, Richard C. Williams, Howard C. Birndorf, Roshawn A. Blunt, and David J. Marguglio (together with Adamis, the "Defendants"). Carlo also served as the Company's President and Chief Executive Officer. Marguglio was a Senior Vice President and Chief Business Officer.

## B. Hammann Approaches Adamis

On February 9, 2021, eight days after the public announcement of the Advaxis consulting agreement, Hammann sent an email to Adamis's investor relations department, requesting "a phone conversation this week with Mr. Dennis Carlo regarding the future of the Company."[8] At the time of this email, Hammann was not a stockholder of Adamis.[9]

The parties' descriptions of their future interactions vary. Defendants contend that Hammann threatened to purchase stock in the company, to pursue a books and records demand, and to run an expensive proxy contest if the Company did not pay him a large fee for his "consulting services."[10] Hammann contends that he

---

[8] PTO ¶ 24.

[9] *Id.* ¶ 25.

[10] DX 2 ¶¶ 5–6. *See id.* ("Hammann made clear that the Company's only choices were to hire him or be drawn into a proxy contest against him, and recommended that his proposed 'consulting agreement' was likely to be less intrusive to Adamis's business. He also

5

approached Adamis about enacting changes in the Company to benefit stockholders.[11]

On March 10 and 11, the Adamis board of directors met to discuss Hammann's inquiry and an appropriate response.[12] The board also engaged the law firm of Vinson & Elkins, L.L.P. ("V&E") to advise the Company regarding these matters.[13] Acting upon V&E's advice, the Company contacted the Federal Bureau of Investigation (the "FBI"), forwarding information about the Company's contacts with Hammann.[14] The FBI investigated the issue and listened in on a call between Marguglio and Hammann.[15] After further investigation, the FBI and attorneys at the United States Attorney's Office for the Southern District of California (the "USAO") concluded that "the case did not necessarily fit the 18 United States Code [§] 875(d) related to extortion."[16] The USAO declined prosecution.[17]

---

informed Company representatives that he had recently learned that he could make a career out of running proxy contests and that he intended to make a business of effecting similar shakedowns in the future.").

[11] Dkt. 67 ("Compl.") ¶ 21.

[12] PX 19; PX 20. The minutes for these meetings indicated that Kevin Kelso, from the law firm of Weintraub Tobin attended the meeting. The minutes are signed by Defendant Williams, who is identified as the Secretary of the Meeting. *Id.*

[13] PX 19.

[14] PX 7 at 86:5–89:20 (Marguglio).

[15] *Id.* at 104:10–108:5.

[16] PX 23.

[17] PX 24.

Hammann purchased 1,000 shares of Adamis common stock in street name on March 11, 2021.[18] On March 18, 2021, Hammann served a books and records demand on Adamis.[19] The demand stated that the purpose of the request was, in part, to solicit proxies for the election of different directors or to propose different proposals than those the Company would advance.[20] Adamis later responded by producing the Adamis stockholder list.[21]

## C. Advance Notice By-Law

Adamis has an advance notice bylaw that governs the submission of stockholder proposals and nominations. It states, in pertinent part:

> For nominations or other business to be properly brought before an annual meeting by a stockholder pursuant to clause (iii) of Section 5(a) of these Amended and Restated Bylaws, (i) the stockholder must have given timely notice thereof in writing to the Secretary of the corporation, . . . . To be timely, a stockholder's notice must be received by the Secretary at the principal executive offices of the corporation not later than the close of business on the 90th day nor earlier than the close of business on the 120th day prior to the first anniversary of the date of the preceding year's annual meeting; **provided, however,** that subject to the next sentence of this Section 5(b), **in the event that the date of the annual meeting is changed by more than 30 days before or after such anniversary date** (or if no annual meeting was held in the preceding year), notice by the stockholder to be timely must be so received not earlier than the close of business on the 120th day prior to the date of such annual meeting and not later than the later of the close of business on the later of the 90th day prior to the date of such annual

---

[18] DX 5 at 13–14.

[19] PX 27.

[20] *Id.* at 5.

[21] PTO ¶ 47.

meeting or **the 10th day following the day on which public announcement of the date of such meeting is first made**.[22]

The bylaws provide that the type of "public announcement" that can trigger the advance notice provision includes "a document publicly filed by the corporation with the Securities and Exchange Commission pursuant to Section 13, 14 or 15(d) of the 1934 Act."[23]

The Company's 2020 proxy statement disclosed that proposals or nominations for the 2021 annual meeting "generally must be submitted in writing . . . and received by our Corporate Secretary no later than May 22, 2021, but no earlier than April 22, 2021."[24] The 2020 proxy also disclosed the applicable deadlines for stockholder proposals in the event that the board selected a meeting date more than 30 days before or after the prior meeting's anniversary date.[25] The proxy instructed its readers to review the Company's bylaws, which state that only record holders may submit nominations for the board of directors.[26] Hammann reviewed the 2020 proxy before first contacting Adamis.[27]

---

[22] PX 13 § 5(b) (emphasis added).

[23] *Id.* § 5(f).

[24] PX 28 at 57–58.

[25] *Id.*

[26] *Id.*; PX 13 § 5(a)(iii).

[27] DX 1 at 219:11–19 (Hammann).

On April 13, 2021, Carlo's executive assistant contacted Williams, Blunt, and Birndorf to schedule an Audit Committee meeting for the following day, copying Adamis's counsel, Kevin Kelso, from Weintraub Tobin Chediak Coleman Grodin Law Corporation ("Weintraub Tobin").[28] Kelso responded that "David [Marguglio] and/or Dennis [Carlo] should also attend a relatively brief part of the call, which will be a Board item to approve the date of this year's annual meeting of stockholders (to include the date in the Form 10-K filing)."[29] Marguglio responded that he would make himself available.[30]

On April 14, 2021, Adamis's Audit Committee met via teleconference.[31] Minutes from that meeting indicate that the meeting was held from 9:30 a.m. to 10:00 a.m. and was attended by Williams, Birndorf, Carlo, and Marguglio, as well as certain officers of and counsel for the Company.[32] Phone records of the conference call indicate that the call began at approximately 9:27 a.m. and ended at 9:40 a.m.—less than half the duration reflected in the minutes.[33]

---

[28] PX 34.

[29] *Id.*

[30] *Id.*

[31] PX 38.

[32] *Id.*

[33] PX 37.

Adamis also produced meeting minutes of an April 14, 2021, telephonic meeting of the full board of directors. Those minutes represent that the board meeting was held from 10:00 a.m. to 10:10 a.m.[34] The minutes indicate that all five directors—Williams, Birndorf, Blunt, Carlo, and Marguglio—attended the meeting.[35] The minutes describe a resolution proposed by Williams and adopted by the directors to set the annual meeting date on July 15, 2021.[36] The minutes are signed by Williams, who purportedly acted as the chair and secretary of the meeting.[37]

There was no call log or other documentation presented at trial evidencing a full board meeting on April 14, 2021. Marguglio and Carlo testified that they recalled attending the April 14 board meeting.[38] On the other hand, neither Williams nor Birndorf could specifically recall having attended the meeting.[39] Blunt, who had not called into the Audit Committee meeting, did not recall having attended the

---

[34] PX 39.

[35] *Id.*

[36] *Id.*

[37] *Id.*

[38] PX 7 at 147:14–20 (Marguglio). Hammann asked Marguglio at his deposition whether he would remember the April 14, 2021, meeting if he had not been shown meeting minutes indicating that the meeting occurred, to which Marguglio indicated that he could not answer without speculation. *Id.* at 151:2–6.

[39] PX 1 at 115:9–12 (Williams); PX 68 at 66:10–12 (Birndorf) ("[Q.] Do you recall whether you were in attendance at this meeting? A. It says I was, so I must have been.").

10

board meeting, even though the meeting minutes listed him as present.[40] Marguglio and Carlo testified that the board moved the annual meeting date earlier in the summer in order to be more consistent with the dates of the Company's annual meeting in previous years and the customary timing of annual meetings for other public companies.[41]

On April 15, 2021, Adamis filed its 2020 Annual Report on Form 10-K with the United States Securities and Exchange Commission. On page 67, the Company disclosed that its annual meeting would be held on July 16, 2021, thus triggering the advance notice bylaw.[42] The proxy stated:

> Because the expected date of the 2021 Annual Meeting represents a change of more than 30 calendar days from the date of the anniversary of the Company's 2020 annual meeting of stockholders, the Company is informing stockholders of this change and the updated deadlines for stockholders to submit proposals intended for inclusion in our proxy statement or nominations for director or proposals for consideration at the 2021 Annual Meeting in accordance with the rules and regulations of the SEC and the Company's Bylaws. . . . In addition, to be timely, stockholders wishing to nominate a candidate for director or to propose other business at the 2021 Annual Meeting, must ensure that proper notice is received by the Company at its offices no later than the close of business on April 25, 2021, which is the 10th day following the day on which public announcement of the date of the 2021 Annual Meeting is first made by us.[43]

---

[40] PX 40 at 90:3–9 (Blunt).

[41] *See* PX 7 at 154:25–155:7 (Marguglio); PX 12 at 78:18−79:22 (Carlo); *id.* at 115:21−116:2.

[42] PX 43 at 67.

[43] *Id.*

11

Hammann downloaded the 10-K onto his computer on April 15, 2021, but stated at his deposition that he did not recall whether he read it prior to April 25, 2021.[44] The first time he understood this section to set an advanced deadline for nominations was on May 21, 2021, when he read Adamis's proxy statement.[45]

Hammann knew he needed to be a stockholder of record in order to submit director nominations or stockholder proposals. To that end, on April 20, 2021, Hammann began the process of becoming a stockholder of record, which he understood would take 4–6 weeks.[46] Ultimately, Hammann was able to complete the process in a shorter time period, and the shares were transferred to him of record on May 5, 2021.[47]

Hammann began contacting potential board nominees on April 29, 2021.[48] He was able to collect completed nomination forms for his slate in less than two weeks.[49] Hammann delivered to Adamis four director nominations and three

---

[44] DX 1 at 164:5–19 (Hammann).

[45] *Id.* at 357:21−358:2.

[46] Hammann Aff. ¶ 20.

[47] PX 54.

[48] DX 1 at 289:11−25 (Hammann).

[49] *Id.* at 291:14−18 ("Q. Okay. So in a span of six days from when you first contacted Mr. Ramelli, you had gotten the documentation you needed to make a nomination of him for the board of Adamis? A. Correct."); *id.* at 296:10−14 ("Q. Okay. So to summarize, within a couple days of hearing of this woman's existence, you had her full nomination form in hand? A. That is a fair summary."); *id.* at 302:22−303:2 ("Q. In any event, within seven

stockholder proposals on May 6 and 7, 2021.[50]  By letter dated May 18, 2021, Adamis rejected Plaintiff's proposals and nominations as untimely under the advance notice bylaw.[51]

### D.    Procedural History

On June 9, 2021, Hammann filed his *pro se* complaint, asserting six claims against Adamis and its directors.[52]  Hammann also filed a motion to expedite and for a temporary restraining order, seeking to prevent Defendants from disseminating their proxy statement or convening the annual stockholders' meeting on July 16, 2021.[53]  On June 16, the court heard argument on the motions.[54]  In a telephonic ruling the next morning, the court denied the motion for a temporary restraining order and granted the motion to expedite Count VI, which alleged that the Defendants' actions in scheduling the annual meeting after Hammann threatened a proxy contest constituted inequitable conduct under *Schnell v. Chris-Craft Industries, Inc.*, 285 A.2d 437 (Del. 1971).[55]  Given Hammann's delay in seeking

---

days . . . of first contacting Ms. Crain, you had her nomination materials in hand, and you submitted them to the company the next day?  A.  Yeah.").

[50] DX 9; PX 49.

[51] DX 10.

[52] Dkt. 1.

[53] Dkts. 6–8.

[54] Dkt. 21.

[55] Dkt. 22.

expedited proceedings and recognizing the court's ability to grant relief after a prompt trial following the annual meeting, the court offered to conduct a trial on the merits in September 2021.[56] The court explained that in the event Hammann prevailed, the court could either compel Defendants to conduct a new meeting or, alternatively, require the Defendants to accept Hammann's director nominations and stockholder proposals for consideration at the 2022 annual meeting.[57]

Shortly after the court granted the motion to expedite and offered September for a trial on the merits, the parties began to engage in discovery. Yet despite having secured the opportunity to present his case in September 2021, Hammann did not press for a trial. He alleges that he was unable to make progress in the case because Defendants were stonewalling by creating an artificial disagreement as to a confidentiality stipulation, over redacting documents, and delaying in delivering discovery.[58] When Defendants proposed a schedule providing for an October 2021 trial, Hammann objected to a footnote and did not respond to the proposed schedule

---

[56] *Id.* at 19:17–19.

[57] *Id.* at 16:21–18:13; *see Oliver Press P'rs, LLC v. Decker*, 2005 WL 3441364, at *2 (Del. Ch. Dec. 6, 2005); *Millenco L.P. v. meVC Draper Fisher Jurvetson Fund I, Inc.*, 824 A.2d 11, 19 (Del. Ch. 2002); *Immunomedics, Inc. v. Venbio Select Advisor LLC*, 2017 WL 822800, at *3 (D. Del. Mar. 2, 2017); *Accipiter Life Scis. Fund, L.P. v. Helfer*, C.A. No. 2057-N, at *57 (Del. Ch. Apr. 25, 2006).

[58] Pl.'s Opening Br. 42.

again until January 27, 2022.[59] In the meantime, Hammann did not seek court intervention to address any disputes over discovery or scheduling.

Following the court's entry of the order granting expedited proceedings, Hammann did not make a single case filing until March 14, 2022. But rather than press for a trial date, Hammann filed a motion for a temporary restraining order, seeking to prevent Adamis from changing the structure or composition of its board of directors and from replacing any board members who might resign in advance of the 2022 annual meeting.[60] At the conclusion of a March 28, 2022 hearing, the court denied the motion, in part because Hammann had unreasonably delayed in prosecuting his claims.[61] The court pointed out that it had offered Hammann a trial date for his *Schnell* claim in September 2021. Instead of seizing on this offer, Hammann had proceeded for over eight months without requesting that the court fix a trial date and he had not responded to the Defendants' proposed schedule for six months.[62] The court also questioned whether anything remained of the case in light of the impending 2022 annual meeting.[63] Notably, Hammann did not submit director nominations or stockholder proposals for the 2022 annual meeting.

---

[59] Dkt. 47 Ex. 15.

[60] Dkt. 30.

[61] Dkts. 50, 58.

[62] Dkt. 58 at 22:14–23:7.

[63] *Id.* at 23:8–17; *id.* at 24:10–16.

15

On April 6, 2022, Hammann sought leave to file an amended complaint, which Defendants opposed.[64] On April 25, Hammann filed a motion to enjoin Adamis from convening its 2022 annual meeting of stockholders until after the conclusion of this action.[65] On April 28, 2022, the court denied the motion for a preliminary injunction, but granted the motion to amend and supplement the complaint.[66]

Hammann filed his first amended complaint (the "Complaint") on May 9, 2022.[67] On May 19, the parties submitted competing forms of a case scheduling order.[68] On May 23, Defendants filed motions to dismiss and for summary judgment.[69] On June 6, the court granted Defendants' proposed scheduling order, which called for the parties to request a trial date two days after receiving an order on the pending motion to dismiss.[70]

---

[64] Dkts. 56, 58.

[65] Dkt. 62.

[66] Dkts. 65–66. The court concluded that the motion for a preliminary injunction merely rehashed the same claims asserted in Hammann's original complaint challenging the rejection of his 2021 stockholder proposals and nominations, which he had not pursued over the prior ten months. Dkt. 65.

[67] Dkt. 67.

[68] Dkts. 68–69.

[69] Dkts. 71–72.

[70] Dkt. 78.

On August 12, Adamis held its 2022 annual stockholders' meeting, at which Birndorf, Marguglio, Williams, Meera J. Desai, and Vicki S. Reed were elected as directors to serve one-year terms.[71]

The court scheduled a hearing on the pending motions to dismiss and for summary judgment for December 19, 2022 at 9:15 a.m. at the Leonard L. Williams Justice Center.[72] At 10:59 p.m. on Sunday, December 18, Plaintiff filed a motion to appear telephonically.[73] The court convened the scheduled in-court hearing on December 19, with Defendants' counsel in attendance, and denied the motion to appear telephonically.[74] Later that day, the court issued an order to show cause as to why Hammann should not be required to pay the fees of Defendants' counsel in traveling to and attending the hearing.[75]

On January 20, 2023, concurrent with the filing of his opening pretrial brief, Hammann filed a motion for sanctions and a motion for referrals against Defendants

---

[71] Adamis Pharmaceuticals Corp., Current Report (Form 8-K) (Aug. 17, 2022).

[72] Dkt. 87.

[73] Dkt. 93.

[74] Dkts. 94, 99.

[75] Dkt. 96. On March 24, 2023, the court issued an order requiring Hammann to pay the Defendants' attorneys' fees in traveling to and attending the December 19, 2022 hearing. Dkt. 135. On July 17, 2023, Defendants filed a motion to enforce the court's March 24, 2023 order. Dkt. 149. In the meantime, on March 27, 2023, Hammann filed a second motion for sanctions against Defendants and their counsel. Dkt. 140.

and their counsel.[76]  A one-day paper trial was scheduled for March 16, 2023.  The court held a pretrial conference on March 13, 2023.[77]  At the pretrial conference, the court denied Hammann's motion for referrals and Defendants' motion for summary judgment.  The court also denied Defendants' motion to dismiss, in part, deferring the motion to dismiss as to Counts VIII and IX until trial.[78]  Late afternoon on March 15, 2023, Plaintiff filed another motion for a temporary restraining order, seeking to prevent Defendants from closing a pending transaction to sell 16.5 million Adamis shares to a third-party.[79]  At the start of trial on March 16, the court denied Plaintiff's new motion for a temporary restraining order.  Following trial, which was conducted on a paper record,[80] the parties engaged in further motion practice, with Plaintiff filing a second motion for sanctions and Defendants filing a motion to enforce a previous court order.  The court determined that it would consider the case submitted as of May 1, 2023.[81]

---

[76] Dkts. 108–09.

[77] Dkt. 131.

[78] Dkts. 127, 129–30.

[79] Dkt. 132.

[80] The record consists of approximately 100 exhibits, including seven depositions.

[81] Dkt. 150.

## II. ANALYSIS

This opinion addresses the issues presented at trial. Hammann's motions for sanctions and Defendants' motion to enforce the court's March 24, 2023 order will be addressed in a separate decision.

### A. Hammann's Claims Seeking to Invalidate the 2021 Election of Directors Are Moot.

"Under Article IV of the Delaware Constitution, this court may adjudicate only actual, ongoing cases or controversies." *Matter of Jeremy Paradise Dynasty Tr.*, 2021 WL 5564086, at *7 (Del. Ch. Nov. 29, 2021) (citing Del. Const. art. IV, § 11). A matter is moot "when the substance of the dispute disappears due to the occurrence of certain events following the filing of an action." *Diamond State Port Corp. v. Int'l Longshoremen's Ass'n*, 2011 WL 891201, at *1 (Del. Ch. Feb. 24, 2011) (internal quotations omitted). "According to the *mootness* doctrine, although there may have been a justiciable controversy at the time the litigation was commenced, the action will be dismissed if that controversy ceases to exist." *Gen. Motors Corp. v. New Castle Cty.*, 701 A.2d 819, 823 (Del. 1997) (citing *Glazer v. Pasternak*, 693 A.2d 319, 320 (Del. 1997)). If a claim is moot, the court has no subject matter jurisdiction to proceed with that claim. *Nama Hldgs., LLC v. Related World Mkt. Ctr., LLC*, 922 A.2d 417, 435 (Del. Ch. 2007).

The heart of this case lies in Count VI, the sole remaining claim from the original complaint. Count VI alleges that the board's decision to schedule the 2021

annual meeting for July 16, 2021, triggering the ten-day submission deadline under the Company's advance notice bylaw, was inequitable action intended to frustrate the stockholders' voting franchise under *Schnell*.[82] Related to Count VI are Counts VII, VIII and IX. Count VII alleges the Defendants did not comply with the Adamis bylaws in setting the meeting date.[83] Counts VIII and IX assert a variety of disclosure-based claims in connection with the 2021 annual meeting. The primary remedy sought for these claims is an order nullifying the results of the 2021 election, compelling the Defendants to conduct a new election with Hammann's slate and proposals on the ballot, and mandating certain disclosures. Plaintiff asserts his claims solely in his individual capacity and is not purporting to assert class or derivative claims.

---

[82] In *Schnell*, the Delaware Supreme Court reaffirmed the long-standing principle that "inequitable action does not become permissible simply because it is legally possible." 285 A.2d at 439. In that case, the defendant board, knowing of an impending proxy contest, advanced the date of the annual stockholders' meeting by approximately one month and moved the location of the meeting to upstate New York. *Id.* The board's conduct was held to be inequitable because the dissidents had already geared their campaign to the announced meeting date, and the board's actions gave the dissidents little chance to prepare a proxy contest. *Id.* The Court directed that the original meeting date be reinstated. *Id.* at 440.

[83] Section 5(a) of the Adamis bylaws provides: "The annual meeting of the stockholders of the corporation, for the purpose of election of directors and for such other business as may lawfully come before it, shall be held on such date and at such time as may be designated from time to time by the Board of Directors." PX 13 § 5(a).

The issues presented in Counts VI–IX are moot. The directors elected at the 2021 annual meeting were elected to serve one-year terms.[84] Those one-year terms have since expired, and a new election was held in August 2022, at which a new board, comprising three incumbents and two new directors, was elected.[85]

Plaintiff stands in the shoes of many litigants whose challenges to director elections became moot after a subsequent election. For example, in *Loudon v. Archer-Daniels-Midland Co.*, 700 A.2d 135 (Del. 1997), the stockholder plaintiff filed a complaint challenging the 1995 election of directors based upon alleged material omissions and misleading proxy disclosures. Our Supreme Court, relying on a decision from the United States Court of Appeals for the Seventh Circuit involving the same election, held that most of the claims were moot, because at the time of the appeal the company had already held a 1996 annual meeting and elected a new board. *Id.* at 141 (citing *Buckley v. Archer-Daniels-Midland Co.*, 111 F.3d 524, 526 (7th Cir. 1997)); *see also Matter of Jeremy Paradise Dynasty Tr.*, 2021 WL 554086, at *7 (Del. Ch. Nov. 29, 2021) ("A claim challenging the validity of a fiduciary's appointment becomes moot when the fiduciary resigns, as there is no

---

[84] Under the Adamis bylaws, "the directors shall be elected at each annual meeting of stockholders for a term of one year." *Id.* § 17(a).

[85] Adamis Pharmaceuticals Corp., Current Report (Form 8-K) (Aug. 17, 2022). The meeting was adjourned after the election of directors but before the stockholders could vote on the proposal for a Reverse Stock Split. *Id.* The meeting was reconvened on September 8, 2022 and the stockholders declined to approve the proposal. Adamis Pharmaceuticals Corp., Current Report (Form 8-K) (Sept. 12, 2022).

longer an 'actual controversy remaining between the parties' about whether the fiduciary was validly appointed." (quoting *Stearn v. Koch*, 628 A.2d 44, 46 (Del. 1993)); *Shaev v. Adkerson*, 2015 WL 5882942, at \*12 (Del. Ch. Oct. 5, 2015) (holding that "[e]ven assuming, for argument's sake, that Plaintiff's disclosure allegations are valid, there is no relief available" where the next annual meeting had already occurred, and the entire board had been reelected); *Maldonado v. Flynn*, 597 F.2d 789, 797 n.10 (2d Cir. 1979) (noting that claims as to the validity of the 1975 election were moot where the terms of those elected in 1975 had expired, but allowing claims to continue as to directors elected in 1976 and 1977); *Gen. Elec. Co. v. Cathcart*, 980 F.2d 927, 934 (3d Cir. 1992) (dismissing a claim for new director elections as moot where a subsequent, unchallenged election took place before the court of appeals decided the case); *Lee v. Schmidt–Wenzel*, 766 F.2d 1387, 1390 (9th Cir. 1985) (concluding that a claim to void elections which filled board vacancies was moot when parties stipulated to and conducted a new election); *Sanders v. Thrall Car Mfg. Co.*, 582 F. Supp. 945, 956–57 (S.D.N.Y. 1983) (finding claims regarding 1978 and 1979 director elections to be moot where there was no claim of pecuniary harm and where requested equitable relief would have no actual effect because directors were elected at a subsequent stockholder meeting), *aff'd*, 730 F.2d 910 (2d Cir. 1984); *Smillie v. Park Chem. Co.*, 466 F. Supp. 572, 575 (E.D. Mich. 1979) (concluding that allegations concerning prior elections are moot where the elected

individuals have completed their terms), *aff'd*, 710 F.2d 271 (6th Cir. 1983); *In re AGNC Inv. Corp.*, 2019 WL 464134, at *3 (D. Md. Feb. 6, 2019) ("All United States Courts of Appeals to address this issue have held that challenges to elections of directors for lapsed terms are moot.").

Plaintiff does not try to confront these cases on the merits. Instead, he advances a superficial argument that his claims fall within an exception to the mootness doctrine. Specifically, Plaintiff insists that his claims are capable of repetition but evading review.[86] This argument fails for at least two independent reasons. First, as Plaintiff acknowledges, this narrow exception is only available for an "alleged injury . . . of inherently limited duration and likely to happen again to the same complaining party."[87] Even assuming that his claim is transitory,[88] "'there is no reasonable expectation, much less a demonstrated probability that the same controversy will recur' between [Hammann] and [Adamis]." *Buckley*, 111 F.3d at 527 (quoting *Board of Educ. of Downers Grove Grade Sch. Dist. No. 58 v. Steven*

---

[86] Pl.'s Reply Br. 31–32.

[87] *Id*. at 31 (quoting *Buckley*, 111 F.3d at 527).

[88] Hammann also ignores that this court frequently affords expedited treatment to consider stockholder claims challenging proxy disclosures and a board's refusal to waive enforcement of advance notice bylaws. *See, e.g.*, *Sternlicht v. Hernandez*, 2023 WL 3991642 (Del. Ch. June 14, 2023) (deciding a motion seeking to enjoin enforcement of advance notice bylaw for a preliminary injunction less than seven weeks after the filing of the complaint); *see also Box v. Box*, 697 A.2d 395, 399 (Del. 1997) ("Delaware courts are always receptive to expediting any type of litigation in the interest of affording justice to the parties.").

*L.*, 89 F.3d 464, 468 (7th Cir. 1996)).  In fact, the events surrounding the 2022 annual meeting demonstrate the opposite.  In 2022, the board did not schedule the annual meeting of stockholders in a way that triggered the advance notice bylaw.  Nor did Hammann present any stockholder proposals or director nominations for the 2022 meeting.  Plaintiff offers no evidence suggesting that a court could not enjoin a future election of directors upon a timely complaint asserting well-pleaded claims under the *Schnell* doctrine or for materially misleading disclosures or omissions.

## B.  Hammann Has Not Established Grounds for Other Equitable, Declaratory, or Monetary Relief.

Plaintiff's requested alternative remedies are equally unavailing.  In addition to invalidating and "re-running" the 2021 annual meeting, Plaintiff requests that this court (1) award him damages; (2) order that Defendants issue retractions as to their false or misleading statements; and (3) grant declaratory relief; and (4) require Defendants pay Hammann's costs, fees, and expenses for pursuing the proxy contest and this action.[89]  Each is unavailable to Hammann.

### 1.  Damages and Fees

Plaintiff argues that he is entitled to damages as a result of Defendants' manipulation of the 2021 annual meeting date.  He also seeks an award of attorneys'

---

[89] Pl.'s Opening Br. 59–61.

fees under the bad faith exception to the American Rule.[90]  For damages, Plaintiff requests $945,000, which he contends represents the time he expended pursuing the 2021 proxy contest and litigating this case.[91]  Hammann argues that he should be entitled to damages for time expended at the $275 hourly rate he purportedly charges to consulting clients.[92]  He contends that he would have incurred a $45,000 monthly charge, which, working backwards, would represent more than 164 hours per month for the four months preceding the 2021 annual meeting.[93]  For the 21 total months he spent litigating this case, accounting for a month with less substantial efforts, he contends that he is owed at least $945,000 in damages for time expended, in addition to around $20,000 in out-of-pocket expenses.[94]

---

[90] Delaware follows the American Rule, requiring that both parties to litigation bear their own legal fees and expenses.  *Goodrich v. E.F. Hutton Gp., Inc.*, 681 A.2d 1039, 1044 (Del. 1996).  The court recognizes a limited exception to this rule when a party has acted in bad faith during the course of litigation.  *Beck v. Greim*, 2020 WL 1915946, at *3 n.2 (Del. Ch. Apr. 17, 2020) (quoting Donald J. Wolfe, Jr. & Michael A. Pittenger, *Corporate and Commercial Practice in the Delaware Court of Chancery* § 17.03[e], at 17-13–17-16 (2d ed. 2019)).  "[T]he bad faith exception is not lightly invoked."  *Id.* at *1.  The court will shift fees under the bad faith exception only upon a finding by "clear evidence" that the party against whom the fee award is sought acted in subjective bad faith.  *Johnston v. Arbitrium (Cayman Islands) Handels AG*, 720 A.2d 542, 546 (Del. 1998).  This remedy is reserved only for extraordinary cases.  *Lawson v. State*, 91 A.3d 544, 553 (Del. 2014).

[91] Plaintiff's Complaint did not seek damages, although one of his 16 separate requests for relief included a request for attorneys' fees.  *See* Compl. at 37–38.  At his deposition, Plaintiff testified that he had not yet decided whether to seek damages in this action.  DX 1 at 386:9–14 (Hammann).

[92] Pl.'s Opening Br. 61.

[93] *Id.*

[94] *Id.* at 62–63.

It is the plaintiff's burden to establish damages by a preponderance of the evidence. *Great Am. Opportunities, Inc. v. Cherrydale Fundraising, LLC*, 2010 WL 338219, at *22 (Del. Ch. Jan. 29, 2010). "To obtain a meaningful remedy for a breach of duty, a plaintiff . . . must prove by a preponderance of the evidence that a sufficient causal linkage exists between the breach of duty and the remedy sought to make the remedy an apt means of addressing the breach." *Metro Storage Int'l LLC v. Harron*, 275 A.3d 810, 859 (Del. Ch. 2022). "Under Delaware law, a plaintiff can only recover those damages which can be proven with reasonable certainty." *PharmAthene, Inc. v. SIGA Techs., Inc.*, 2010 WL 4813553, at *11 (Del. Ch. Nov. 23, 2010). "[D]amages must be 'logically and reasonably related to the harm or injury for which compensation is being awarded.'" *Metro Storage*, 275 A.3d at 859 (quoting *In re J.P. Morgan Chase & Co. S'holder Litig.*, 906 A.2d 766, 773 (Del. 2006)).

Even if Plaintiff were to be successful on the merits of his claims here, he has not established that he is entitled to the damages he seeks. Plaintiff seeks as damages reimbursement for the time he has expended in this case as a *pro se* litigant. He claims this right to damages under a fee-shifting theory. *See* Pl.'s Opening Br. 62 ("Under a fee shifting theory of recovery, Hammann should be entitled to his $945,000 in effort."); Pl.'s Reply Br. 35 ("Hammann's services pursuing this case constitute damages attributable to Defendants' and their counsels' conduct. But for

26

this conduct, Hammann would not have expended these services.").[95]  Hammann is not entitled to an award of fees as a *pro se* litigant.  "Delaware, like many other states, does not grant attorneys' fees to self-represented litigants."  *Adams v. Calvarese Farms Maint. Corp., Inc.*, 2010 WL 3944961, at *24 (Del. Ch. Sept. 17, 2010); *see also Clark v. D.O.W. Fin. Corp.*, 2000 WL 973092, at *7 (Del. Super. May 26, 2000) ("[T]here is no Delaware precedent for granting a *pro se* litigant attorney's fees."); *cf. Manzo v. Rite Aid Corp.*, 2002 WL 31926606, at *5 (Dec. 19, 2002) ("[A]warding money damages to compensate plaintiff for the return she *could* have earned had she invested elsewhere-as she was free to do, but didn't do-amounts to speculation founded upon uncertainty."), *aff'd*, 825 A.2d 239 (Del. 2003) (TABLE).  Plaintiff has offered no policy or precedent to support his damages theory.  Plaintiff is not entitled to an award of attorneys' fees as a *pro se* litigant, and he may not obtain such an award indirectly under the guise of unsupported damages.  Beyond seeking the equivalent of fee shifting, to which he is not entitled, Plaintiff has established no other basis for damages.[96]

---

[95] Hammann then inexplicably, and without legal support, claims that this amount should be doubled to reflect the risk of litigation.  Hammann Aff. ¶ 54.  The list of expenses for which Hammann lists as damages all reflect litigation expenses.  *See* PX 80.

[96] Hammann argues that he has suffered "damages to [his] reputation" as a result of the Defendants allegedly false and materially misleading statements, which he alleges impugned his character and discourage him from undertaking or fully pursuing his proxy contest.  Pl.'s Opening Br. 60–61.  But Hammann makes no attempt to quantify those

## 2.    Equitable and Declaratory Relief

Plaintiff argues that even if the court cannot require a new 2021 election, declaratory relief is appropriate. He maintains that declaratory relief would: (1) more fully inform stockholders regarding their voting choices; (2) increase the likelihood that the authorities will prosecute Defendants for their "unlawful conduct"; (3) permit the voiding of a 2022 separation agreement between Adamis and Carlo and the 2022 employment agreement between Adamis and Marguglio (both entered after the 2021 annual meeting); (4) permit removal of the directors pursuant to a Section 225(c) action; (5) repair Hammann's personal and professional reputation; and (6) deter other boards from engaging in similar behavior.

---

damages, which are based purely on conjecture. *See Beard Rsch., Inc. v. Kates*, 8 A.3d 573, 613 (Del. Ch. 2010) ("[W]hen acting as the fact finder, this Court may not set damages based on mere 'speculation or conjecture' where a plaintiff fails to adequately prove damages."); *Henne v. Balick*, 146 A.2d 394, 396 (Del. 1958) ("The law does not permit a recovery of damages which is merely speculative or conjectural."). Beyond that, the only legal authority cited for his damages on this theory is a defamation case. Pl.'s Reply Br. 30 (citing *Spence v. Funk*, 396 A.2d 967 (Del. 1978)). This court is not the appropriate forum to address a defamation claim. *See Organovo Hldgs., Inc. v. Dimitrov*, 162 A.3d 102, 119 (Del. Ch. 2017) (noting that equitable courts traditionally will not exercise jurisdiction over a defamation claim); *Preston Hollow Cap. LLC v. Nuveen LLC*, 216 A.3d 1, 5 (Del. Ch. 2019) ("The general rule is that equity lacks jurisdiction over a request to enjoin common-law defamation."); *Smith v. Scott*, 2021 WL 1592463 (Del. Ch. Apr. 23, 2021) (declining to exercise jurisdiction over a defamation claim under the clean-up doctrine given the policy interest in having defamation claims decided by a jury); *Tygon Peak Cap. Mgmt., LLC v. Mobile Invs. Investco, LLC*, 2022 WL 34688, at *11 (Del. Ch. Jan. 4, 2022) (dismissing defamation claim for lack of subject matter jurisdiction).

28

The court may entertain an action for declaratory judgment only if an actual controversy exists between the parties. *See* 10 *Del. C.* § 6501; *Stroud v. Milliken Enters., Inc.*, 552 A.2d 476, 479 (Del. 1989). For an actual controversy to exist:

> (1) It must be a controversy involving the rights or other legal relations of the party seeking declaratory relief; (2) it must be a controversy in which the claim of right or other legal interest is asserted against one who has an interest in contesting the claim; (3) the controversy must be between parties whose interests are real and adverse; (4) the issue involved in the controversy must be ripe for judicial determination.

*Stroud*, 552 A.2d at 479–80 (quoting *Rollins Int'l, Inc. v. Int'l Hydronics Corp.*, 303 A.2d 660, 662–63 (Del. 1973)). This court applies the doctrine of mootness in determining whether an actual controversy is present. *Rollins Int'l*, 303 A.2d at 662–63.

Plaintiff is not entitled to declaratory or injunctive relief because his injury is no longer redressable. *Shaev* is directly on point. In that case, the plaintiff asserted claims for breach of fiduciary duty with respect to disclosures in a 2014 proxy statement. *Shaev*, 2015 WL 5882942, at *3. The plaintiff sought a declaratory judgment that the 2014 election of directors and the approval of a say-on-pay proposal were void. *Id.* at *12. In dismissing the complaint, the court held the requested relief was unavailable because a new election of directors had occurred in 2015, rendering the disclosure claims moot. *Id.* As here, the plaintiff in *Shaev* argued that a declaration that the directors had violated their duty of loyalty in

29

making false disclosures, "could serve as the basis for a [later] § 225 action." *Id*. (alternation in original); *see* Pl.'s Opening Br. 58 (arguing that the requested declarations "are necessary for Hammann to file a 8 Del. § 225(c) [sic] action to remove the Individual Directors from office"). The court rejected that argument in *Shaev*, stating: "Such an assertion does not support Plaintiff's contention that the Court should render an advisory opinion on a mooted fiduciary duty claim so that stockholders, who have since reelected the same directors, could later seek removal of such directors in a Section 225 action." 2015 WL 5882942, at *12.

Similarly, in *Multi-Fineline Electronix, Inc. v. WBL Corp. Ltd.*, the court held that a claim for declaratory and injunctive relief was moot when the lock-up agreement at issue had since expired. 2007 WL 431050, at *8 (Del. Ch. Feb. 2, 2007) ("[E]ven under the bald assumption that the complaint alleged an actual controversy at the time it was filed, it no longer does so. Therefore, mootness provides a separate and independent ground on which the court must dismiss M–Flex's complaint."). As in *Shaev* and *Multi-Fineline*, the actual controversy underlying Counts VI–IX are moot, and there is basis to consider declaratory relief because there is no viable remedy.[97]

---

[97] Equitable relief for Plaintiff's disclosure-based claims, which were added in May 2022, is also unavailable. Count VIII alleges that the Adamis directors breached their duties of loyalty when they stated in letters to stockholders and investor presentations that Hammann

30

### 3. Plaintiff Cannot Be Heard to Lay Blame with the Defendants for His Delay.

Plaintiff blames Defendants and their counsel for the delays in advancing this case to trial. The record shows otherwise. Hammann first filed his complaint on June 9, 2021.[98] Shortly after, he moved to expedite the proceedings and sought a temporary restraining order.[99] On June 17, 2021, the court ruled on the motions, denying the motion for a temporary restraining order and granting the motion to expedite only as to the *Schnell* claim.[100] The court instructed the parties to confer on a schedule for taking the *Schnell* claim to trial, suggesting a September trial date.[101] But Hammann did not take up the court's invitation to proceed quickly to trial.

---

"(a) had no public company experience; (b) had no biopharmaceutical expertise; (c) had no articulated plan; (d) had no plan; and (e) had an apparent track record of launching value-destructive activist campaigns." Compl. ¶ 118. Count IX further allege that Carlo misrepresented to a stockholder, Ronald Newcomb, that Hammann "(a) is a conman/extortionist; (b) asked for a $250,000 consulting agreement before this all started; (c) was told no; and, (d) then proceeded along a pathway to deceive shareholders." *Id.* ¶ 137. Hammann seeks a court order requiring the Adamis directors to issue retractions so as to reduce the cost of a proxy contest in new 2021 annual meeting and, relatedly, "result in an increase in shareholder voting." Pl.'s Opening Br. 60–61. Because Plaintiff's claim seeking a new annual meeting is moot, the requested relief of "retractions" to assist him in running a proxy contest that will not occur is also moot.

[98] Dkt. 1.

[99] Dkts. 6–8.

[100] Dkt. 22.

[101] *Id.* at 19:15–19.

Following a July 8, 2021 teleconference between the parties, Defendants proposed a schedule providing for an October 2021 trial.[102] Plaintiff responded on July 28, saying that he believed that a footnote was objectionable and that the proposed order was inconsistent with a September trial date, as the court had indicated in granting expedition.[103] Nevertheless, Hammann replied that he would "continue to consider this proposed scheduling order."[104] Defendants responded minutes later, stating that they believed the proposed schedule, including the offending footnote, was consistent with what the parties had discussed, and they offered to discuss the matter with Plaintiff.[105] Plaintiff did not respond further or suggest changes to the proposed schedule until six months later—on January 27, 2022.[106]

Plaintiff also appears to have been in no rush to take depositions. Plaintiff did not contact Defendants until November 9 to schedule depositions.[107] Defendants responded promptly, providing opportunities to depose Marguglio on November 30, 2021 and Williams on December 1.[108] Plaintiff waited until the last minute before

---

[102] Dkt. 47 Ex. 12.

[103] *Id.* Ex. 13.

[104] *Id.*

[105] *Id.* Ex. 14.

[106] *Id.* Ex. 15.

[107] *Id.* Ex. 24.

[108] *Id.* Ex. 25.

Marguglio's proposed deposition to secure a remote deposition service provider and ultimately had to cancel the deposition.[109] Plaintiff subsequently canceled Williams's deposition because Plaintiff said he first wanted to complete a FOIA request on the FBI.[110] He did not ultimately take depositions of the five director defendants until January 2022. On January 27, 2022, Plaintiff informed Defendants that he had attempted to contact Ronald Newcomb, a non-party, to provide deposition testimony in the case.[111] He then waited until March 11 to serve Newcomb with a subpoena and ultimately deposed him on March 17, 2022.

While Hammann dragged his feet behind the scenes, the court heard nothing about Hammann's plans to propel his case to trial. After the court granted in part Plaintiff's motion to expedite on June 17, 2021, Hammann did not make a single case filing until March 14, 2022—nine months later—and that filing was a motion for a TRO seeking to prevent the board from changing the size of the board or adding or replacing its members.[112] It did nothing to move Hammann's existing claims towards trial.

Rather than seek a trial date or entry of a scheduling order, Plaintiff repeatedly moved for immediate injunctive relief regarding the filling of vacancies and the

---

[109] *Id.* Ex. 26.

[110] *Id.* Ex. 27.

[111] *Id.* Ex. 15.

[112] Dkt. 30.

convening of the 2022 annual meeting.[113]  He then waited until April 2022 to file a proposed amended complaint, adding for the first time disclosure claims relating to the 2021 annual meeting—a meeting that had concluded nine months earlier.  During this time, Plaintiff was free to nominate a slate or make stockholder proposals for the fast-approaching 2022 annual meeting, but for unexplained reasons he chose not to do so.[114]

"[E]quity aids the vigilant, not those who slumber on their rights."  *Adams v. Jankouskas*, 452 A.2d 148, 157 (Del. 1982).  "Because injunctions and specific performance constitute uncommon and extraordinary relief, a plaintiff is required to act with more alacrity than he would be were he requesting monetary damages."  *Whittington v. Dragon Gp. L.L.C.*, 2009 WL 1743640, at *13 (Del. Ch. June 11, 2009).  That requirement applies not only to the initial application for expedited proceedings, but also to advancing the case toward a prompt hearing.  Thus, a plaintiff prevailing on an initial motion to expedite who later fails to secure a timely hearing date or otherwise does not press its case risks losing the right to an expedited proceeding.  Plaintiff here had ample opportunity to secure a prompt trial, but chose

---

[113] Dkts. 30, 62, 83.

[114] Unless the board set the annual meeting more than 30 days before or after July 16, 2022—the anniversary date of the prior year's annual meeting—the window to make director nominations under the Company's advance notice bylaw was between March 18, 2022 and April 17, 2022.

not to do so. Hammann cannot now blame Defendants for the delays in this case when he frittered away the time available to try this case and to allow for a decision well in advance of the 2022 annual meeting. It is the Plaintiff's responsibility to press his claims. Hammann failed to do so here. As a result, he lost the right to pursue his claims on an expedited basis and must accept the consequences of his nonchalance.

### 4. Judicial Estoppel

Plaintiff next argues that Defendants should be estopped from arguing that his claims are moot. Judicial estoppel "prevents a litigant from advancing an argument that contradicts a position previously taken that the court was persuaded to accept as the basis for its ruling." *Motorola Inc. v. Amkor Tech., Inc.*, 958 A.2d 852, 859 (Del. 2008). This doctrine aims to protect the integrity of the judicial process by prohibiting parties from engaging in a bait and switch, advancing a position to its benefit in one instance and later contradicting that same position to gain an unfair advantage. *See Julian v. E. States Const. Serv., Inc.*, 2009 WL 1211642, at *6 (Del. Ch. May 5, 2009). "The party's prior position will be considered a basis for the court's ruling where (i) the prior position contributed to the court's decision . . . ; (ii) the court relied on the party's prior position . . . ; or (iii) the party's newly inconsistent position contradicts the court's ruling." *In re Rural/Metro Corp. S'holders Litig.*, 102 A.3d 205, 247 (Del. Ch. 2014) (internal quotations omitted).

For judicial estoppel to apply, the later position must be inconsistent with the previously advanced position. *La Grange Cmtys., LLC v. Cornell Glasgow, LLC*, 74 A.3d 653, at *4–5 (Del. 2013) (TABLE).

Defendants argued at the TRO stage that there was no irreparable injury because the court could use its equitable power to void the results of the 2021 annual meeting after it occurred.[115] Plaintiff argues that Defendants may not assert that his claims are moot because the court accepted that argument. Plaintiff ignores, however, that the court accepted that argument within the legal precedents that concluded equitable relief could be available before the next annual meeting.[116] Thus, Defendants are not estopped from arguing Plaintiff's claims are moot.

## III. CONCLUSION

For the foregoing reasons, judgment is entered in favor of Defendants and against Plaintiff as to all of Plaintiff's claims.

---

[115] Dkt. 10 at 35–36.

[116] Dkt. 21 at 28:9–29:2 (explaining that under precedent the court could "order a new election **before the next annual meeting** or, by extension, require the company to put the stockholders' slate on the ballot or allow them to run for office **at the next annual meeting**" (emphasis added)); Dkt. 22 at 16:21–17:2 (denying motion for a TRO, proposing a trial in September, and noting: "[A]n adequate remedy can be fashioned after trial if the plaintiff ultimately prevails. The Court could order a new meeting for the election of directors or could order the Company to allow plaintiff to run an opposing slate **at next year's annual meeting**." (emphasis added)).